# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DAY, Minors.

UNPUBLISHED
December 28, 2017

Nos. 338975; 338976
Lenawee Circuit Court
Family Division
LC No.   16-000765-NA

Before:  MURRAY, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Respondent-mother, A. Levault, and respondent-father, M. Day, each appeal as of right the trial court's order terminating their parental rights to the minor children, NSD and KED, pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*), and (k)(*v*).  We affirm.

The younger child, KED, was brought to a hospital emergency room on three occasions. On September 22, 2016, Levault brought three-month-old KED to the Bixby Medical Center ER after observing KED become unresponsive.  Bixby transferred KED to Toledo Children's Hospital.  KED was diagnosed with an "alternative life threatening event" (ALTE), but Levault testified that KED was diagnosed only with "rhinovirus."  On October 5, 2016, Levault brought KED to the Bixby ER because KED had been crying inconsolably since October 4.  Levault reported that Day had told her that KED's 16-month-old sister, NSD, sat on KED the day before. KED screamed when her right leg was touched or moved.  KED had multiple bruises on her abdomen, arms, and right leg.  The treating physician determined that her injuries were not consistent with a toddler sitting on her, as her bruises were consistent with being squeezed or grabbed on both sides.  KED was given an osseous survey and CT scan, but neither of these test revealed any injuries.  KED was diagnosed with multiple contusions, chest wall contusions, and right leg pain.

On October 19, 2016, Day was the only adult present in the home with KED and NSD. Day observed that KED was unresponsive and limp.  Levault's stepmother transported KED to the Bixby ER, which then transferred KED by helicopter to Toledo Children's Hospital.  A CT scan, MRI, and x-rays revealed that KED had a subdural hematoma, extensive retinal hemorrhaging in both eyes, at least two bone fractures in her right leg, and multiple bruises. Petitioner filed a petition for jurisdiction over the children, and requested termination of respondents' parental rights at the initial disposition.

Levault entered a plea of admission and admitted several paragraphs of the petition.  The trial court thereafter conducted a contested hearing to determine adjudication with respect to Day

-1-

and to determine whether there were grounds to terminate both respondents' parental rights at the initial disposition. Before the hearing, the trial court granted respondents' motion for funds to obtain expert witnesses in pediatric neurology and orthopedics, and it later granted respondents' motion to adjourn continuation of the hearing to provide respondents with more time to depose their experts and introduce their testimony into evidence. Ultimately, however, respondents did not present any expert testimony at the termination hearing. The trial court terminated respondents' parental rights to KED and NSD, but declined to do so with respect to their children from previous relationships.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Both respondents argue that they were denied the effective assistance of counsel, entitling them to a new hearing.

" '[T]he principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings.' " *In re CR,* 250 Mich App 185, 197-198; 646 NW2d 506 (2002) (citation omitted), overruled on other grounds by *In re Sanders*, 495 Mich 394, 422 (2014). Neither respondent raised this issue in an appropriate motion or request for a *Ginther*[1] hearing in the trial court. Therefore, review of this issue is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "If the record does not contain sufficient detail to support [respondents'] ineffective assistance claim, then [they have] effectively waived the issue." *Id*. To establish ineffective assistance of counsel, respondents must show that counsel's performance fell below an objective standard of reasonableness and that the representation so prejudiced respondents that it denied them a fair trial. *In re CR,* 250 Mich App at 198. Establishing prejudice necessarily requires demonstrating a reasonable probability that the result of the proceedings would have been different absent counsel's errors. *Id*. The party claiming ineffective assistance "must overcome a strong presumption that the assistance of his counsel was sound trial strategy[.]" *Davis*, 250 Mich App at 368 (citation and quotation marks omitted).

### A. DOCKET NO. 338975 (RESPONDENT LEVAULT)

Levault's first cluster of arguments pertains to her plea of admission to most of the allegations in the petition. Levault contends that: (1) her admissions essentially conceded petitioner's entire case for termination; (2) her admissions cost her the opportunity to defend against the petition; and (3) trial counsel failed to investigate the factual sufficiency of ¶ 25 in the petition. These arguments are without merit because the allegations admitted by Levault mainly concerned objective facts regarding the history of the case and the contents of the medical records. Levault did not admit that she abused KED, or that she failed to protect KED from abuse by Day. She admitted that Day was on probation for a stalking offense, and that petitioner investigated allegations of domestic violence in June 2016. She also admitted that Day reported finding NSD sitting on KED's abdomen. Paragraphs 11 to 13 in the petition referenced the findings of Bixby medical personnel on October 5, 2016. These could be verified by the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

statements in the hospital records. Paragraphs 14 to 16 pertained to the circumstances of Day's discovery that KED was unresponsive and the assistance from Levault's stepmother, A. Brown, in taking KED to the hospital ER. Levault's testimony regarding her knowledge of the events of October 19 was consistent with these admissions, and she does not explain what testimony she would have given contrary to these admissions. Paragraphs 16 to 17 state facts recorded in the Bixby records for October 19, 2016. Paragraph 19 states that KED was transported by Life Flight to Toledo Children's Hospital, while paragraphs 20 to 22 state facts recorded in the Toledo Children's Hospital records for October 19, 2016. Paragraphs 23 to 23A state that Day and Levault failed to provide a reasonable explanation for KED's injuries, but nowhere does Levault assert that she gave a reasonable explanation. Paragraph 24 states the objective facts regarding CPS's safety plan.

Levault argues that her admission of Paragraph 25 was, in effect, an irremediably prejudicial admission that deprived her of any opportunity to defend herself against the alleged statutory grounds for termination. This argument misconstrues the meaning of Paragraph 25, which alleged that "[o]n 10/20/2016, Toledo Children's Hospital reported [KED] to have retinal bi-lateral hemorrhages from non-accidental trauma." This was not an admission that Levault or Day was culpable, nor was it a statement that the hospital report was factually correct. It was an objective statement regarding the contents of the hospital's report. And, unless the hospital records did not contain this finding, Levault's admission did not concede anything that was not already proved by the admission of the records into evidence. Levault's admission did not prevent her from contesting the reported diagnosis or the cause of the reported trauma.

Levault also overstates the significance of her plea of admission to the trial court's termination decision. The trial court briefly remarked that Levault admitted Paragraphs 1 to 9, 11 to 17, and 19 to 25, but then extensively reviewed all of the witnesses' testimony. Levault's argument also fails to acknowledge that her own testimony was inconsistent on many issues and at least equally harmful as the facts in the medical records.[2]

We reject the notion that Levault's admissions deprived her of an opportunity to present her theory that non-abusive events caused KED's condition. There is no record evidence that

---

[2] For example, Levault minimized the history of domestic violence with Day, and blamed law enforcement officers for coercing her to make false accusations against Day. Levault also gave implausible explanations for her conduct, as she testified that KED showed signs of seizure before September 22, but she failed to contact her pediatrician. She admitted that KED had been crying inconsolably and showing signs of severe pain for a full day before she sought medical attention on October 5, yet she attributed her delay to a lack of transportation and lack of access to outgoing calls, contrary to her testimony and Brown's testimony that she could contact Brown quickly by Facebook Messenger. Levault also denied telling Dr. Nelson that NSD caused KED's injuries by sitting on her, but Dr. Nelson testified that this was the explanation offered. Levault implausibly maintained that KED was diagnosed with nothing more serious than rhinovirus on September 22, 2016, inconsistent with the ALTE diagnosis in KED's records. She also blamed NSD for KED's injuries.

Levault had any evidence to substantiate this theory, or more importantly, that she was precluded from presenting such a theory.

Levault also argues that after she entered her plea, the trial court should have proceeded to disposition with respect to her, but instead thereafter erroneously adjudicated both respondents, even though she was already adjudicated. Levault implicitly asserts two errors by the trial court: (1) adjudicating Day before issuing a dispositional decision with respect to her; (2) adjudicating both Day and Levault even though she had already been adjudicated. Levault argues that trial counsel was ineffective for failing to object to these errors.[3]

"Once a court assumes jurisdiction over a child, the parties enter the dispositional phase." *In re Sanders*, 495 Mich at 406. "Because the jurisdictional inquiry is focused on the child, once there has been *an* adjudication, either by trial or by plea, the court has jurisdiction over the child regardless of whether one or both parents have been adjudicated unfit." *Id*. at 407, citing MCL 712A.2(b). In *In re Sanders*, our Supreme Court abolished the "one-parent doctrine," in which the trial court was permitted "to enter dispositional orders affecting the parental rights of *both* parents," although jurisdiction over the child had been established "by adjudication of only *one* parent . . . ." *Id*. at 407. The Court concluded "that due process requires a specific adjudication of a parent's unfitness before the state can infringe the constitutionally protected parent-child relationship." *Id*. at 422. Accordingly, Levault and Day each had the right to a separate adjudication. Levault opted to enter a plea of admission on which the trial court asserted jurisdiction over the children, whereas Day exercised his right to a bench trial.

Levault contends that the trial court violated these rules by subjecting her to a second adjudication along with Day, but there is no indication that the trial court subjected Levault to a second adjudication. The two-day evidentiary hearing served the dual purpose of an adjudication with respect to Day (i.e., whether there were grounds for exercising jurisdiction with respect to Day) and a dispositional hearing (i.e., whether there were statutory grounds for termination and whether termination was in the children's best interests) with respect to both respondents. The trial court implicitly acknowledged the dual purpose when it referenced Levault's admissions before reviewing the trial testimony. Petitioner's case for adjudication of Day as a respondent and for termination of both respondents' parental rights was based on the same evidence. Levault has not established that the trial court violated proper procedures, so an objection for any of the reasons stated by Levault would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Levault also fails to explain why the dual-purpose hearing prejudiced her, or why she would have obtained a more favorable outcome if the trial court had proceeded to disposition for her before adjudicating Day.

---

[3] Somewhat inconsistently, she argues that trial counsel should have taken advantage of the purported second adjudication by withdrawing her previous admissions, which would have given her an opportunity to defend herself against petitioner's allegations and present evidence on her own behalf.

We similarly conclude that Levault's argument, that trial counsel failed to use the "second adjudication" to her advantage by withdrawing her plea, is similarly without merit as she fails to state any legal basis for setting aside her plea. Moreover, as indicated earlier, many of Levault's admissions pertained to the contents of medical records, which would have spoken for themselves regardless of her admissions. Petitioner's case for termination was not based primarily on Levault's admissions, but on ample evidence that KED was subjected to severe physical abuse in respondents' care. Levault thus fails to establish that trial counsel's representation in regard to her adjudication either fell below an objective standard of reasonableness, or that she was prejudiced by these alleged errors. *In re CR*, 250 Mich App at 198.

Levault's next cluster of ineffective assistance claims pertain to counsel's failure to pursue Levault's rights to an opportunity to demonstrate adequate parenting skills. This relates to Levault's argument that trial counsel also was ineffective for failing to request reunification services to allow respondent the opportunity to demonstrate that she was able to care for the children. After a child has been removed from a parent's custody, petitioner is generally required to make reasonable efforts to reunify the child and the family. MCL 712A.19a(2). However, services are not required in every situation. See MCL 712A.18f(1)(b); *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). "Services need not be provided where reunification is not intended." *In re LE*, 278 Mich App 1, 21; 747 NW2d 883 (2008). "[T]he petitioner is not required to provide reunification services when termination of parental rights is the agency's goal." *In re Moss*, 301 Mich App 76, 91; 836 NW2d 82 (2013) (citation and quotation marks omitted). Petitioner sought termination of Levault's parental rights at the initial disposition and, therefore, was not required to provide services. Trial counsel was therefore not ineffective for reminding the trial court to check the appropriate box or for failing to move the court to order petitioner to provide services. Trial counsel's actions were not unreasonable.

We next turn to Levault's argument that is premised on trial counsel's alleged failure to develop persuasive defense theories. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *Davis*, 250 Mich App at 368. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation and quotation marks omitted; alteration in original). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation and quotation marks omitted).

Specifically, Levault complains that trial counsel failed to develop the defense theories that another person harmed KED, or that KED's injuries were caused by medical disorders. Trial counsel did not call expert witnesses and did not present a closing argument. Although trial counsel did not present convincing evidence of either of these theories, there is no record evidence that better development was feasible. Levault does not identify any witness who could have corroborated or bolstered the defense theory that KED might have been harmed by the boyfriend of Day's sister. Levault's own conduct in failing to seek medical attention for KED until the following day, or in failing to suggest the sister's boyfriend to the police until weeks

after the investigation began, undermined this theory. Trial counsel elicited Levault's and Brown's testimony that NSD pinched, poked, and squeezed KED. Levault does not indicate that she or any other witness could have bolstered or corroborated this theory with more detailed testimony. Levault denied that Day harmed KED. She does not identify any other individual with access to KED who might have perpetrated the abuse.

Levault has also failed to provide any documentation that any expert would have testified in support of a medical explanation for KED's injuries. Although two experts agreed to review the evidence and offer opinions, respondents failed to produce these witnesses. The trial court allowed respondents additional time to depose the experts and submit their depositions into evidence, but respondents did not exercise this option. Levault has not presented any additional offer of proof or witness affidavits showing what testimony an expert could have provided in support of a medical explanation for KED's injuries. Consequently, there is no factual basis for Levault's argument that favorable expert testimony was available to trial counsel, and Levault cannot establish that failure to present expert testimony deprived her of a substantial defense.

We also reject Levault's argument that trial counsel should not have pursued contradictory defense theories. In the circumstances of this case, it was not unreasonable to pursue both an alternative perpetrator defense and an alternative explanation defense. Petitioner was required to prove by clear and convincing evidence that statutory grounds existed to terminate parental rights. MCR 3.977(A)(3) and (H)(3); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). Levault could, therefore, prevail by establishing that petitioner's evidence was not sufficient to prove a statutory ground for termination by clear and convincing evidence, either because KED's injuries were not caused by abuse, or because another person was responsible for any abuse. Levault has failed to overcome the presumption that trial counsel exercised sound strategy by raising both of these possibilities. *Davis*, 250 Mich App at 368.

Levault also complains that defense counsel failed to object to the trial court's order to sequester Dr. Smith at the termination hearing. Day's counsel requested an exemption for Dr. Smith, but the trial court denied the request. Levault argues that sequestration of Dr. Smith was unnecessary because he was present only in an advisory capacity, but neither respondent objected to the children's counsel's statement that Dr. Smith would testify. Because an objection would have been futile if respondents were considering calling Dr. Smith, and because the record does not establish that respondents were certain that Dr. Smith would not testify, the record does not support this claim that counsel was ineffective. Further, Levault fails to identify any instance in the hearing in which she might have more effectively cross-examined a witness if Dr. Smith had been present. Accordingly, she has not established that failure to object to sequestration was objectively unreasonable, or that she would likely have obtained a more favorable outcome if Dr. Smith had remained in the courtroom.[4]

---

[4]Levault argues that counsel was ineffective for failing to call witnesses or present evidence to prove that termination of her parental rights was in the children's best interests. Again, Levault fails to identify any testimony or evidence that counsel might have offered. Therefore, this argument cannot succeed.

## B. DOCKET NO. 338976 (RESPONDENT DAY)

Day raises many of the same claims of ineffective assistance of counsel that Levault raises, including with respect to Levault's entry of a plea of admission. Our analysis regarding Levault's claim that her trial counsel was ineffective in regard to her entry of a plea of admission applies with equal force to Day's arguments. Moreover, there is no merit to Day's argument that he was improperly adjudicated based on Levault's admissions, or that the trial court relied on Levault's admissions to find that a statutory ground for termination existed with respect to him. As indicated earlier, after Levault entered her plea of admission, the trial court complied with procedural requirements by conducting an evidentiary hearing for the dual purpose of adjudicating him and deciding the petition to terminate parental rights at the initial disposition. The court did not rely on Levault's admissions to make findings related to Day. Also, as explained earlier, the allegations pertaining to information from KED's medical records were proved at trial through the testimony of petitioner's experts. Accordingly, Day's claim that trial counsel acted incompetently by failing to object to the procedure is without merit.

Day also echoes Levault's argument that trial counsel was ineffective for failing to secure expert witnesses. Again, however, without affidavits or some other offer of proof showing what testimony an expert could have provided, this claim cannot succeed.[5]

## II. RESPONDENT DAY'S CLAIMS OF EVIDENTIARY ERROR

Day also raises several claims of evidentiary error. "A party opposing the admission of evidence must timely object at trial and specify the same ground for objection that it asserts on appeal." *In re Weiss*, 224 Mich App 37, 39; 568 NW2d 336 (1997); MRE 103(a)(1). Day failed to object to the testimony he now challenges on appeal, so this issue is unpreserved. Unpreserved claims of error are reviewed for plain error affecting the party's substantial rights. *In re Williams*, 286 Mich App 253, 274; 779 NW2d 286 (2009). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003).

We reject Day's argument that Detective Birdwell's testimony regarding Day's criminal record from the Law Enforcement Information Network (LEIN) report was inadmissible hearsay, and inadmissible under MRE 609, and so could not be used against him at trial. MCR 3.997(E)(3). "Under MRE 801(c), 'hearsay' is defined as 'a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *People v Solloway*, 316 Mich App 174, 198-199; 891 NW2d 255 (2016). Hearsay evidence is inadmissible unless it falls within one of the exceptions listed in the Michigan Rules of Evidence. *Id.* at 199; MRE 802. MRE 803(6) and (8) provide an exception to the exclusion of hearsay as follows:

---

[5] *In re Yarbrough Minors*, 314 Mich App 111, 114; 885 NW2d 878 (2016), is not helpful to any issue presented, as that case involved a due process challenge to a trial court's denial of fees to appoint an expert witness. The trial court awarded fees in this case. *In re Yarbrough Minors* also did not involve an ineffective assistance of counsel argument.

**(6) Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, . . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . .

\* \* \*

**(8) Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, and subject to the limitations of MCL 257.624.

The LEIN report qualifies for admission under these exceptions, as it did not contain information on "matters observed by police officers" in criminal matters. The record contained objective facts concerning Day's charges and convictions. If Day had objected to Birdwell's testimony, petitioner might have been required to establish a foundation for admission of Birdwell's testimony, but in the absence of an objection, we cannot conclude that Birdwell's testimony was clearly inadmissible.

Day's reliance on MRE 609 is misplaced. That rule applies when evidence of a criminal conviction is offered for purposes of impeachment. Detective Birdwell's testimony regarding Day's criminal record was not offered to attack his character for truthfulness. Day has not otherwise established that evidence of his criminal record was irrelevant. The challenged evidence showed that Day had a history of assaultive conduct. This evidence was probative of whether there was a reasonable expectation or reasonable likelihood that Day might harm a child, as well as Day's ability to provide proper care and custody. See MCL 712A.19b(3)(b)(*i*), (g), and (j). Accordingly, Day has not demonstrated that admission of Birdwell's testimony constituted plain error affecting his substantial rights.

Day complains that Dr. Nelson testified "in reference to hearsay statements by unknown witnesses describing an alternate theory of injury." This argument appears to refer to Dr. Nelson's testimony that he was told that KED's sister sat on KED's abdomen, but he did not recall who told him this. Dr. Nelson's testimony about this explanation was not offered to prove the truth of the matter asserted (i.e., to prove that KED was injured in the manner described), but to show what explanation was provided for KED's injuries. Therefore, Day has not established that the statement qualifies as inadmissible hearsay. Moreover, Dr. Nelson did not testify that Day accompanied KED to the ER on October 5, and he did not attribute the statement to Day.

Therefore, Day has also failed to establish that Dr. Nelson's testimony affected his substantial rights.[6]

        Affirmed.


/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

---

[6] We reject Day's cursory assertion that Levault's and Brown's testimony was inadmissible "to the extent that [it] contained hearsay that formed the basis for the court's determination that she was an incredible witness," but he does not identify any specific testimony that he believes was improperly introduced at trial. See *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). Day also states that the trial court found that Levault's or Brown's testimony not credible because it contained hearsay, but that does not accurately reflect the trial court's decision. The court noted that Levault gave conflicting testimony about Day's domestic violence, and stated, "The court has many concerns raised by the inconsistent testimony and the acknowledgement that she was not truthful with law enforcement previously." The record does not support Day's argument regarding hearsay in Levault's and Brown's testimony.