# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES EVERETT FRISON,

      Defendant-Appellant.

UNPUBLISHED
November 27, 2018

No. 331457
Eaton Circuit Court
LC No. 15-020116-FH

---

## AFTER REMAND

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

BOONSTRA, J. (*dissenting*).

I respectfully dissent. My review of the record leads me to a starkly different conclusion than that reached by the majority. And it leads me to conclude that defendant has failed to do that which we afforded him an opportunity to do.[1] Specifically, we previously remanded this case to the trial court for a *Ginther*[2] hearing, stating:

> On this record, we hold that defendant has not at this juncture established the "factual substantiality" of his ineffective assistance of counsel claim, see *Ginther*, 390 Mich [436,]443[; 212 NW2d 922 (1973)]. However, we also conclude that defendant has sufficiently demonstrated the potential merit of that claim to warrant a remand for an evidentiary hearing in the trial court to aid appellate review of his claim. See *People v Hernandez*, 443 Mich 1, 14-15; 503 NW2d 629 (1993), abrogated on other grounds by *People v Mitchell*, 454 Mich 145; 560 NW2d 600 (1997); see also MCR 7.211(C)(1)(a)(*ii*). *We therefore are providing defendant an opportunity to demonstrate at a Ginther hearing that trial counsel's failure to present the evidence in question deprived him of a substantial*

---

[1] Reviewing courts generally presume that counsel has provided effective assistance, and the defendant has the burden to overcome this presumption. *People v Davis*, 250 Mich App 357, 368-369; 649 NW2d 94 (2002).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-1-

*defense, and that, if that evidence had been presented to the jury, it would have corroborated defendant's version of events such that there is a reasonable probability that the jury would have concluded that the prosecution had not proved its case beyond a reasonable doubt.* See [*People v*] *Armstrong*, 490 Mich [281,] 290[; 806 NW2d 676 (2011)].

*People v Frison*, unpublished per curiam opinion of the Court of Appeals, issued December 5, 2017 (Docket No. 331457) (emphasis added).

Following our remand, the trial court conducted a *Ginther* hearing, at which five witnesses testified,[3] and at which repair receipt records and telephone records (which defendant has contended his trial counsel should have introduced or used at trial) were admitted into evidence. Following the *Ginther* hearing, the trial court entered an order stating as follows:

> This Court finds that Steven A. Freeman's representation of James Frison fell below an objective standard of reasonableness. This Court further finds that Freeman's failure to introduce certain records did not deprive James Frison of a substantial defense because there is not a reasonable probability that the documents corroborate Frison's version of events or that the jury would have believed him over Kees and Barbara Vandervelden.

The majority nonetheless concludes that the evidence introduced at the *Ginther* hearing "clearly supported trial counsel's original admission . . . that he had been ineffective and failed to introduce exculpatory evidence." The majority therefore reverses defendant's conviction and remands for a new trial. I disagree.

I am first compelled to point out that although the trial court found that trial counsel's representation of defendant fell below an objective standard of reasonableness, it did so based on this Court's earlier observation that trial counsel had admitted to having been ineffective, and on our direction regarding the proper focus of the *Ginther* hearing (as set forth earlier in this opinion). In other words, there being two prongs to an ineffective assistance of counsel analysis under *Strickland v. Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984),[4] and it essentially having been assumed—based on trial counsel's admission—that the first prong was satisfied, the focus was to be on the second prong of the analysis.

---

[3] The witnesses who testified at the *Ginther* hearing were: defense trial counsel Steven A. Freeman, complainant Barbara Vandervelden, complainant Kees Vandervelden, Alan Duck, and defendant.

[4] "Under *Strickland v. Washington*, establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. Prejudice means 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Randolph*, 502 Mich 1; 917 NW2d 249 (2018).

Despite his admission of ineffectiveness, trial counsel's testimony at the *Ginther* hearing actually undermines the assumption that his representation fell below an objective standard of reasonableness and therefore satisfied the first prong of the *Strickland* analysis. At the *Ginther* hearing, trial counsel reiterated his belief that he had been ineffective in representing defendant because he had not obtained certain repair receipt records and telephone records that he could have used to try to impeach the Vanderveldens with regard to (1) their knowledge of repairs that were made to a lowboy trailer that was used to transport several pieces of equipment (including the Komatsu excavator that was the subject of the embezzlement charge against defendant),[5] and (2) their communications with defendant during the relevant time period. Notably, however, trial counsel further testified in pertinent part:

Q     Do you think the average attorney of competence would have anticipated needing to get these records prior to trial?

A     No.

Q     So you -- I mean, you wouldn't make it a normal practice to get all these records ahead of time on an issue like this, would you?

A     I would not.

Q     Okay. So really, you've indicated that if you had a similar case, are you gonna do something different?

A     No.

In my judgment, trial counsel's testimony undermines the assumed satisfaction of the first prong of a *Strickland* analysis.[6] It demonstrates not that his conduct was "objectively unreasonable," but rather that, with the benefit of hindsight, he now wishes that he had obtained certain documents so that he could have tried to use them for impeachment purposes. But being "ineffective" in that sense is simply not the same as having provided "ineffective assistance of counsel" in the *Strickland* sense. In evaluating an ineffective assistance of counsel claim, a reviewing court must make every effort "to eliminate the distorting effects of hindsight," *Strickland*, 466 US at 689, including being mindful that no expectation should exist "that competent counsel will be a flawless strategist or tactician," *Harrington v Richter*, 562 US 86,

---

[5] The undisputed record reflects that defendant picked up the Komatsu excavator in Charlotte on or about August 26, 2014 for delivery to Saugatuck and that it was located by police in Lansing in March 2015.

[6] The majority inaccurately characterizes trial counsel's testimony at the *Ginther* hearing as reflecting a "change of heart after being advised that a grievance would be filed against him." To the contrary, the record reflects that trial counsel consistently continued to maintain—even after a brief colloquy about a possible grievance—that he had been ineffective, explaining how he might have used the records at trial and what impact they might have had.

110; 131 S Ct 770; 178 L Ed 2d 624 (2011). "[A]n attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id*.

Defendant has presented no evidence—apart from trial counsel's own "admission" of ineffectiveness—to support a finding that trial counsel's performance was objectively deficient. But as this Court has noted, "it is difficult to conceive of a situation in which a trial attorney, reflecting on his or her performance in a trial, could not, with the benefit of hindsight and the luxury of amply time for consideration, find something in his or her performance that he or she could have done better. That, however, is not the standard for assessing whether trial counsel was effective." *People v Blevins*, 314 Mich App 339, 352; 886 NW2d 456 (2016). Trial counsel's testimony that an attorney of average competence would not have anticipated needing to obtain the records before trial, and that trial counsel himself would do nothing differently in a similar situation today, not only does not support defendant's claim of ineffective assistance of counsel, but undercuts the very notion that trial counsel's performance was objectively deficient such that it could constitute ineffective assistance of counsel.

Even more significantly, however, trial counsel's testimony supports the conclusion that the second *Strickland* prong, i.e., that it be reasonably probable that defense counsel's use of the records in question at trial would have made a difference in the outcome of defendant's trial, also was not satisfied. At the *Ginther* hearing, trial counsel acknowledged that the records would not have negated the effect of defendant's contemporaneous admissions to law enforcement officers:

Q      This is a confession case, wasn't it?

A      My memory is that the defendant did make a statement to law enforcement, yes.

Q      And he admitted to letting Joe Crenshaw use it for $200.00, the excavator; do you recall that?

A      I think, I think he did. Yes.

Q      Kay. Would these, these phone records or anything negate that confession?

A      No, I don't think so.

Q      And at trial, you basically call [defendant] a liar; right? I mean, you stood up in your closing and said he lied to the detectives.

A      I don't recall.

Q      Okay. But you really didn't have any way to combat that confession, did ya?

A      Well, no. It was lawfully received by law enforcement. It certainly was admissible, if that's what you mean.

Q      Okay.  But the -- nothing about this you could have raised a defense to that, or could have kept that, that confession out.  Nothing about this new information.

A      Right.

Moreover, the evidence presented at the *Ginther* hearing establishes nothing to support the majority's conclusion that the second *Strickland* prong was satisfied.  More about that later, though, because before addressing that evidence in detail I think it would behoove us to step back for a moment and recall precisely what defendant's argument is (and what it has been) regarding the alleged ineffective assistance of his trial counsel.  A close examination of the record reveals that defendant has, at various times, offered up a shifting array of ways in which his trial counsel was supposedly ineffective.

The initial impetus for an ineffective assistance of counsel argument was a March 9, 2016 letter from defendant's trial counsel to defendant's then-appellate counsel[7] endeavoring to provide information helpful to an ineffective assistance of counsel argument on appeal.  That letter states in its entirety:

---

[7] Defendant's appellate counsel at that time was Ronald D. Ambrose.  As of at least the time that defendant's brief on appeal was filed (and continuing to the present), defendant has been represented on appeal by Laurel Kelly Young.

03-09-16

Mr. Ambrose –

I respectfully suggest one of your appellate issues be ineffective assistance of trial counsel.

I failed to make any attempt before trial to secure Δ's telephone records. Note one of the jurors asked a question about phone records.

I failed to secure written evidence Δ had the trailer repaired at Langenberg Machine Products before trial & subpoena the owner regarding same. The owner had an actual memory of Δ and the trailer, but I did not obtain written evidence until after trial.

Phone records, repair records, and "victims" use of his credit card to pay for repairs may very well have resulted in a verdict of N/G

Thank you –

P-45125

In other words, trial counsel suggested that he had been ineffective in failing to secure defendant's telephone records and evidence of trailer repairs before trial.

Defendant then filed in the trial court a motion for a *Ginther* hearing or a new trial, arguing in pertinent part:

> Defendant's trial counsel, to his credit, admits he was ineffective in representing Defendant in a number of respects. (See Exhibit B.) In particular, trial counsel admits to being ineffective by failing to make any attempt prior to trial to secure Defendant's telephone records; failed to secure written evidence that Defendant had the trailer repaired at Langenberg Machine Products; and failed to subpoena

and call witnesses, which included a Lansing Police Department officer who responded to a Meijer Gas Station and a friend who assisted. (Id.)[8]

The trial court denied the motion, and this appeal followed.

Notwithstanding this history, defendant's initial brief on appeal notably offered not one word of argument about phone records, or about trial counsel's supposed ineffectiveness in failing to obtain phone records. Nor was there any reference (in the ineffective assistance of counsel section of the brief) to trial counsel's letter to Mr. Ambrose, although that letter was appended to the brief and was referred to in a different section of the brief (relating to the sufficiency of evidence). Instead, defendant argued his trial counsel's ineffectiveness as follows:

> From an examination of the record, it is apparent that trial counsel was constitutionally ineffective in the following ways:
>
> Failure to call Alan Duck, the son-in-law who was present to see the excavator at Meijer and the excavator at Exit 5 on M-6.
>
> Failure to call Issac [sic] McTaggert who assisted Mr. Frison with the front end loader and attempting to get it on the low boy. Mr. McTaggert was also a witness to Mr. Frison loading up the Case excavator.[9]
>
> Failure to track down the police officer/report when Mr. Frison unloaded the Komatsu excavator in Lansing [sic]
>
> Failure to track down the police officer/report when Mr. Frison blocked four lanes of traffic with the Case excavator.
>
> Failure to track down the receipt from the welding company.

---

[8] The "Exhibit B" referred to in the motion was the letter from trial counsel to Mr. Ambrose, although the argument regarding an alleged failure to call a police officer and a friend as witnesses appears to be an expansion beyond what trial counsel had stated in his letter.

[9] Isaac McTaggert appears from the record to be the unidentified "friend" referred to in the earlier motion filed in the trial court.

Failure to track down the credit card charge at the Marathon gas station at the Byron Center exit.[10]

\* \* \*

All of the above investigation would have corroborated Mr. Frison's version of events and clarified the timeline. The above evidence would have shown two things. One, corroborating where the lowboy was at all times, and, two, impeaching the complainants as to their confusion or possibly even fraud.

This represented the entirety of defendant's substantive appellate argument regarding ineffective assistance of counsel and the entirety of defendant's argument regarding specifically how trial counsel's alleged failures supposedly prejudiced defendant,[11] even though, earlier in his initial brief on appeal, defendant had provided as background a recitation of factual and procedural events that included the following:

On Friday August 26, 2016, appellate counsel moved for a new trial and Ginther hearing. Trial counsel had admitted at sentencing that due to a question from a juror, that he should have obtained phone records that illustrated the constant telephone communication between Mr. Frison and the Vanderveldens. Also, he had obtained a receipt from the welding company that corroborated the repair to the lowboy on August 28, 2014.

All of this is to point out that defendant has not only presented a confusing mishmash of facts—much of which is simply not pertinent to the issues before us—but has here and there added to and subtracted from his list of specific alleged failures of his trial counsel in a manner that makes it difficult to follow precisely what it is that trial counsel supposedly did wrong. Be that as it may, however, this Court, in its previous opinion, granted defendant every benefit of every doubt, reaching back even to arguments (e.g., regarding telephone records) that appear to have been abandoned on appeal, and granting defendant the alternative relief that he sought: a full-fledged Ginther hearing.

That brings us to the evidence presented at the Ginther hearing. Notwithstanding the wide-open nature of the hearing, the proofs offered by defendant were relatively limited. During opening statements, defense counsel stated:

---

[10] The "Marathon gas station" referred to in defendant's initial brief on appeal (as located "at the Byron Center exit") apparently differs from the "Meijer Gas Station" (which the record reflects is located in Lansing) referred to in the earlier motion filed in the trial court.

[11] Defendant also filed a Standard 4 brief (a supplemental appellate brief filed in propria persona pursuant to Michigan Supreme Court Order 2004-6, Standard 4), but it did not present an ineffective assistance of counsel argument. Defendant did not file a reply brief on appeal. At oral argument, counsel for defendant did not assert any other alleged failures of trial counsel.

So the evidentiary hearing here today is to find, discover whether or not the failure to get phone records and receipts deprived Mr. Frison of a substantial defense. And I think that we will show here today, I know that we'll show here today that had those phone records been obtained, that Mr. Frison's movements can be corroborated.

Defendant then called defense trial counsel Steven Freeman as a witness. Consistent with defense counsel's opening statement and with the limited scope of the "admission" set forth in Mr. Freeman's letter,[12] he was asked "whether or not [he had] obtained phone records, receipts to try and corroborate [defendant's] movements." He confirmed that he had not, as of the time of trial. He expanded his testimony (again consistent with his letter) to suggest that the receipts could have been "coupled with the testimony of the [repair shop] owner [to] demonstrate that indeed he, [sic] there was damage to the trailer, it was repaired and for that amount." Mr. Freeman also offered testimony that he believed the repair shop owner would testify that the repairs were made to the trailer and that defendant was present at that time.[13]

Defendant next called complainant Barbara Vandervelden as a witness. Although her recollection or knowledge of the specifics of events that had occurred some four years earlier was incomplete, she did testify that she recalled that the trailer in question was damaged and needed repairs. She also recalled at least one phone call with defendant regarding a problem that had occurred during the transit of certain equipment. Her memory was also refreshed (with her trial testimony) regarding another phone call with defendant about loading up the Komatsu excavator for transit the following morning.

Defendant next called complainant Kees Vandervelden as a witness. Mr. Vandervelden testified that he recalled phone calls with defendant "every day" during the relevant time period, and he also recalled that the trailer was damaged and needed to be repaired.

Defendant next called Alan Duck as a witness. Mr. Duck testified (contrary to defendant's argument on appeal) that he had no recollection of an incident at Meijer.[14] He also testified that he did help defendant when the trailer blew a tire in the Grand Rapids area. However, he did not testify (and was not even asked) about any excavator (or which one, if any) being transported at that time. Notably, Mr. Duck further testified that defendant asked him at one point whether he thought Mr. Vandervelden would agree to let someone borrow the

---

[12] Although Mr. Freeman's letter only suggested ineffectiveness in failing to obtain *defendant's* phone records, the testimony at the *Ginther* hearing went beyond that to include the *Vanderveldens'* phone records as well, and indeed those records were admitted into evidence.

[13] The repair shop owner was not called as a witness at the *Ginther* hearing.

[14] Mr. Duck's purported knowledge of an incident at Meijer was part of the basis for defendant's contention on appeal (as quoted earlier in this opinion) that trial counsel was ineffective for failing to call Mr. Duck as a witness at trial.

Komatsu excavator, and that defendant told him that he wanted to earn some extra money by letting someone borrow it.

Defendant then testified on his own behalf. He testified that the Komatsu excavator was unloaded from the trailer and did not accompany the trailer when it was taken in for repair, testified that he had left the excavator in a parking lot in Lansing, admitted that the lot was in the same block as his cousin Joe Crenshaw's construction business, testified that Crenshaw was aware that the excavator was there and that he could have taken it down to his job site, denied that the Vanderveldens had ever asked him where the excavator was, denied that he had told the Vanderveldens that he had delivered the Komatsu excavator to Saugatuck,[15] admitted that he told police officers that he had delivered the Komatsu excavator to Saugatuck, testified that he told the police that he had let Crenshaw use the excavator, testified that what he had told police about letting Crenshaw use the excavator was a lie, and testified that he had lied because he had not wanted Crenshaw to get into trouble. He also described Mr. Duck's testimony at the *Ginther* hearing as "utterly false."

Defendant did not call Isaac McTaggert as a witness. Defendant did not call any police officers as witnesses, or offer into evidence any police reports. Defendant also did not call Joe Crenshaw as a witness.

In closing argument, defendant's counsel argued that "the phone records and the receipts do corroborate every piece of [defendant's] testimony," and that embezzlement had not occurred because "[t]here was no intent by [defendant] to convert that Komatsu [excavator] to his own use."[16]

The trial court ruled that defendant had failed to satisfy his burden with regard to the second prong of a *Strickland* analysis, and entered the order quoted earlier in this opinion. The matter thereupon returned to this Court, and this Court entered an order allowing the parties to file supplemental briefs.

Defendant argued in his supplemental brief that the phone records and repair receipt records introduced into evidence at the Ginther hearing "showed that the Vanderveldens simply lost track of their Komatsu Excavator in their failure to communicate with each other," that the phone records corroborate defendant's "description of events," that "[t]he receipts corroborate his mechanical difficulties," and that "[w]ith the additional evidence, a reasonable juror could

---

[15] By contrast, defendant's counsel subsequently argued at the *Ginther* hearing that defendant was angry after he was fired by the Vanderveldens, and that he therefore "spitefully" told them that he had delivered the Komatsu excavator.

[16] The latter argument strikes me as addressing the sufficiency of the evidence, rather than any ineffectiveness of trial counsel.

-10-

have found [defendant's] testimony to be credible and cast doubt on the VanderVelden's [sic] powers of recollection."[17]

So, where does that leave us? Of all of the ways in which defendant has variously contended that his trial counsel was ineffective, defendant introduced evidence at the *Ginther* hearing only in the form of phone records, repair receipt records, and the testimony of Alan Duck.

As it turns out, Mr. Duck's testimony was decidedly not favorable to defendant, inasmuch as he not only did not provide the testimony that defendant had represented he would provide, but actually provided damaging testimony—consistent with the statement that defendant had given to police—that defendant had inquired with him whether Mr. Vandervelden would allow someone to borrow the Komatsu excavator, and that defendant told him that he wanted to make some money by doing so. Assuming it possible for defendant's credibility to be damaged even more than by the damage he inflicted upon himself with his ever-changing stories, Mr. Duck's testimony certainly would have done so.[18]

The repair receipt records merely demonstrate that a repair was made to a trailer on August 28, 2014. They do not bear on what defendant did with the Komatsu excavator (which had been unloaded from the trailer), or what he told the Vanderveldens about the location of the excavator and whether defendant had delivered it to Saugatuck. The telephone records similarly merely demonstrate that Vanderveldens and defendant were in telephonic communication during the relevant time period. They do not speak to what was said during those communications, or what defendant told the Vanderveldens about the excavator. Neither the fact of the repairs nor the fact of the communications was a material or contested issue at trial.[19]

---

[17] Defendant asks us to read great significance into the fact that one juror asked a question at trial. Specifically, during defendant's trial testimony, the juror (through the trial court) asked the following question (rephrased slightly by the trial court), "You don't have any confirmation of any receipt from the welding shop, is that correct,?" Defendant responded that he did not have a receipt, but that he was present when the owner of the shop spoke by phone with Mr. Vandervelden, and that the shop owner would not have allowed him to leave with the repaired equipment if the repair had not been paid for. I am underwhelmed by the suggestion that the mere posing of this question demonstrates that the jury's verdict was reasonably likely to have been different if defense trial counsel had produced the repair receipt.

[18] The majority nonetheless describes the evidence introduced at the *Ginther* hearing—albeit without evening mentioning Mr. Duck or his testimony—as "bolster[ing]" defendant's credibility. Hardly so, in my judgment.

[19] The parties' trial testimony diverged regarding which piece of equipment was being moved (at least according to their respective knowledge or understanding) at the time the trailer repair was needed. But that difference casts neither light nor darkness on the question of what defendant told the Vanderveldens about the location or delivery of the Komatsu excavator.

The majority—without any explanation--describes the telephone and repair receipt records as "exculpatory." But the majority does not explain how those records exculpate defendant of anything. At most, they are consistent with defendant's timeline of events—as well as with the Vanderveldens' recollection of events—relative to undisputed issues. As we stated in our earlier opinion in this case:

> This case is essentially a "he said, she said" case, with defendant claiming that the complainants knew of the location of their property and that he did not allow anyone to use it, and with the complainants claiming to the contrary that defendant professed to having delivered the Komatsu excavator as instructed. [*People v Frison*, unpublished per curiam opinion of the Court of Appeals, issued December 5, 2017 (Docket No. 331457)]

The telephone and repair receipt records do not aid in resolving that core dispute. The majority is therefore left to posit that the evidence somehow "bolsters" defendant's credibility while "undermin[ing]" the Vanderveldens' credibility. I beg to differ. The evidence does not bolster defendant's credibility in any meaningful way on any material issue. And it does not undermine the Vanderveldens' credibility in any meaningful way on any material issue. To the extent that one or both of the Vanderveldens may have had incomplete or even inaccurate recollection or knowledge, or even—as the majority contends—have displayed confusion and miscommunication, we simply do not measure credibility by testing the state of perfection of witnesses' respective knowledge or recollection of extraneous details of events that occurred years earlier, particularly when the witnesses may not have been present for the events or have the knowledge base for knowing all of the details. Yet the majority effectively imposes that test in order to override the jury's verdict.

At trial, defendant presented several versions of what had happened to the excavator and implored the jury to believe his most recent version at trial. The jury clearly credited the Vanderveldens' and police officers' testimony over defendant's—even without the benefit of Mr. Duck's testimony. We should defer to that determination. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

I agree with the trial court that defendant failed to satisfy his burden at the *Ginther* hearing of showing that trial counsel's alleged failures deprived defendant of a substantial defense, and that a different result would not otherwise have been reasonably probable.[20]

If we were sitting as jurors, we may or may not have reached the same result as did the jury in this case. And if we were sitting as prosecutors, we or may not have exercised our

---

[20] I am also cognizant that our Supreme Court has recently reminded us that it is incumbent on a defendant, at a *Ginther* hearing, to establish that proferred evidence will be "materially favorable" at a retrial. *People v McKeever*, ___ Mich ___, ___; 918 NW2d 526 (2018) (Docket No. 156161) (reversing the Court of Appeals' determination that the defendant was entitled to a new trial notwithstanding his failure to satisfy his burden at a *Ginther* hearing).

prosecutorial discretion as did the prosecution in this case, i.e., to charge defendant with the crime of embezzlement. But to reverse defendant's conviction for such reasons is to lose sight of our role as judges. In my judgment, the majority has done so. See *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), mod 441 Mich 1201 (stating that "appellate courts are not juries, and . . . they must not interfere with the jury's role . . . . [An appellate court] must remember that the jury is the sole judge of the facts. . . . Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony.") (quotation marks and citation omitted); see also *People v Thomas*, 118 Mich App 667, 670; 325 NW2d 536 (1982), citing *Genessee Prosecutor v Genesee Circuit Judge*, 386 Mich 672; 194 NW2d 693 (1972) (stating that "prosecutors have a broad latitude in determining what charge to bring in a criminal prosecution. Absent a clear abuse of discretion, judicial interference with this exercise of prosecutorial judgment is impermissible."). I therefore respectfully dissent from the majority's determination to reverse defendant's conviction and to remand for a new trial.

/s/ Mark T. Boonstra