*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BURKHART, Minors.

UNPUBLISHED
November 14, 2019

No. 347612
Emmet Circuit Court
Family Division
LC No. 17-006527-NA

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Respondent-father appeals by right the family court's order terminating his parental rights to the minor children, KB, MB, and GB, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm to child if returned to parent).[1] We affirm.

## I. PERTINENT FACTS

On November 3, 2017, the Department of Health and Human Services (DHHS) filed a petition requesting the children's removal from the home because both parents were incarcerated. The petition alleged that on November 2, 2017, respondent was found "passed out" in his vehicle while one-year-old GB was buckled in his car seat, also unresponsive. Drug paraphernalia, $1,000 in cash, and white powder were observed inside the vehicle. GB tested positive for cocaine and Xanax. Meanwhile, KB and MB were home alone. Respondent was arrested and admitted to using cocaine. Before this incident, Children's Protective Services (CPS) had been involved with the family and had unsuccessfully attempted to address respondent's issues with substance abuse.

---

[1] During the course of these proceedings, the children's mother voluntarily relinquished her parental rights to the children. She is not a party to this appeal. Accordingly, the term "respondent" as used in this opinion refers only to respondent-father.

-1-

In December 2017, respondent entered a no-contest plea to the allegations in the petition. He subsequently received a 30-day criminal sentence for operating a vehicle while intoxicated and fourth-degree child abuse. Once released, respondent was ordered to comply with random drug screens, attend Alcoholics Anonymous (AA) or Narcotics Anonymous (NA), maintain a substance-free environment, and work with housing services. He participated in a parent-child observational session with a psychologist, who suggested that respondent's substance abuse and criminality could be the result of other conditions and recommended that respondent receive a psychological evaluation.

Throughout the case, respondent was in and out of jail for various probation violations and other criminal activities. At one point, he was ordered to complete 90 days in jail or attend a rehabilitation program; he selected the latter. When confronted with his continued drug use while at the rehabilitation facility, respondent absconded, which resulted in a nine-month jail sentence. At the time of his scheduled psychological evaluation, respondent was incarcerated. Given respondent's failure to participate in services, in August 2018, DHHS sought termination of respondent's parental rights.

The family court declined to authorize the petition, noted that respondent's incarceration had provided respondent with an opportunity to "detox" and get sober, and asked DHHS to continue providing respondent services, including the psychological evaluation. Respondent participated in the psychological evaluation in October 2018. He also attended AA meetings available at the jail. The psychological evaluation revealed that he had a poor prognosis and that treatment of his antisocial personality disorder would require respondent's continued sobriety and could last up to two years. Meanwhile, the children were exhibiting some concerning behavior that their counselor attributed to the lack of stability in their lives. Thereafter, the family court cautioned that respondent would need to show benefit from the services to avoid termination of his parental rights.

Nonetheless, upon his release from jail, respondent did not engage in services right away. He failed to communicate on a timely basis with his caseworker. A short time later, despite attending AA meetings and counseling at Harbor House, respondent tested positive for illegal substances and admitted to drinking alcohol. DHHS filed a second supplemental petition for the termination of respondent's parental rights. Following a termination hearing, the family court concluded that respondent's lack of housing, substance-abuse problem, and failure to comply with the parent-agency treatment plan supported the termination of his parental rights.

## II. REASONABLE EFFORTS

Respondent argues that DHHS did not make reasonable efforts at reunification where it failed to provide adequate housing assistance tailored to respondent's felon status, failed to offer services while he was incarcerated, and failed to give him a sufficient opportunity to participate in services following the results of his psychological evaluation. We disagree.

Absent aggravating circumstances, "[b]efore a court may enter an order terminating parental rights, Michigan's Probate Code, MCL 710.21 *et seq.*, requires a finding that the Department . . . has made reasonable efforts at family reunification." *In re Hicks/Brown*, 500 Mich 79, 83; 893 NW2d 637 (2017). "As part of these reasonable efforts, the Department must

create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. At each review hearing, the family court is required to consider compliance with the case service plan regarding services provided and whether the parent has benefited from those services. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). Not only must a respondent cooperate and participate in the services, the respondent must benefit from them. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). A respondent must establish that he or she would have fared better if other services had been offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).

Respondent raises a conclusory argument that petitioner failed to make reasonable efforts toward reunification because, despite respondent's testimony that it was difficult to obtain housing given his status as a felon, petitioner did not provide "tailored services" necessary to address his barrier to housing. But we note that respondent failed to raise any objections to the services provided throughout the pendency of this case.[2] Further, respondent does not cite any authority for the proposition that DHHS was required to provide "tailored services" above and beyond those that were provided, and we find no support for this proposition. Additionally, respondent fails to identify what services should have been provided. This Court is not required to unravel and elaborate on a respondent's arguments and may instead deem an issue abandoned. *People v Cameron*, 319 Mich App, 215, 232; 900 NW2d 658 (2017).

Moreover, the record indicated that throughout the pendency of this case, the caseworker provided respondent with information on different income-based apartments, the number for the Community Action Agency, and numbers for homeless shelters. The caseworker also offered to transport respondent to obtain housing applications, but he did not accept the offer, and she did not believe that he contacted those resources. Further, respondent was incarcerated often during the proceedings, which in itself would have hampered his ability to seek and maintain housing. Respondent has failed to establish that he would have fared better if other services had been offered.

Respondent also argues that DHHS failed to provide reasonable services because he was not offered services while in jail. More specifically, respondent argues that DHHS failed to provide respondent with a psychological evaluation within a reasonable timeframe, and without this evaluation, the appropriate services necessary to resolve respondent's issues could not be identified. Respondent posits that DHHS was unreasonable for failing to investigate whether the evaluation could be performed at the jail, thereby causing the evaluation to be delayed for seven months after it was recommended and six months after respondent was incarcerated.

We conclude that there is no merit to respondent's arguments. First, we note that respondent was scheduled to participate in a psychological evaluation in April 2018. But the appointment was cancelled because of respondent's incarceration. Accordingly, any delay in obtaining the psychological evaluation was attributable to respondent's actions and not the fault

---

[2] To preserve an issue regarding reasonable efforts at reunification, a respondent must object or indicate that the services provided to him or her were inadequate in some fashion. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012).

of DHHS. Further, respondent never asked for the evaluation to be rescheduled after his incarceration. Nonetheless, the psychologist indicated that although he did not recall ever performing a psychological evaluation at the county jail, he believed it was possible to do so with the appropriate clearance. Finally, the record suggested that respondent's psychological evaluation was performed while respondent was still incarcerated. Accordingly, respondent was not denied any services, and, as stated above, any delay in obtaining the psychological evaluation was caused by respondent's own actions.

Lastly, respondent argues that he was not provided with reasonable services because he was not given a copy of the results of his psychological evaluation until December 28, 2018. Respondent maintains that because he had not received the report and the services recommended therein, it should come as no surprise that he relapsed once released from jail. This argument is unavailing. During the termination hearing, the caseworker indicated that the psychological evaluation report was received by her office on November 2, 2018, although she was uncertain if she saw it that day. She stated that she remitted copies to all attorneys shortly after she received the evaluation and provided a copy to respondent at the very next visit that she had with him after he requested a copy. Aside from this, the caseworker testified that on November 27, 2018, the psychologist recommended that respondent participate in an ADHD evaluation, attend AA or NA three times weekly, obtain a sponsor as quickly as possible, participate in individual therapy, engage in visitation once weekly, and attend parenting classes if there were any struggles noted. Accordingly, at the time of his release from jail, respondent was aware of the services that he needed to engage in on the basis of his psychological evaluation. Further, respondent was also made aware that DHHS was seeking termination of his parental rights and that he needed to show a benefit from services. Nonetheless, the caseworker's testimony supported a conclusion that respondent did not seek out the services he needed immediately upon his release, and shortly thereafter, he again began testing positive for controlled substances. Thus, there is no indication that respondent would have fared differently if he had been provided a copy of the evaluation report at an earlier date.

Further, we note that tailored services to address housing, an earlier psychological evaluation, or even earlier receipt of the psychological evaluation would not have addressed all of respondent's remaining barriers. The testimony at the termination hearing demonstrated that respondent showed minimal progress despite being provided, and even being engaged in, several services. Indeed, given that respondent returned to substance use shortly after he was finally able to detoxify in jail, we are not persuaded that respondent would have fared better even if petitioner offered other services. *In re Fried*, 266 Mich App at 543. Accordingly, the family court did not clearly err by concluding that petitioner made reasonable efforts to preserve and reunify the family.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent next argues that he received ineffective assistance of counsel because trial counsel did not question the psychologist about how the steps respondent was taking toward sobriety impacted his prognosis, failed to question the children's therapist about the effects of trauma treatment itself and respondent's absence on the trauma experienced by the children, and failed to call one of his substance-abuse counselors to testify concerning the benefits he was receiving from services. Again, we disagree.

-4-

When a parent argues that he or she did not receive competent representation, "this Court applies by analogy the principles of ineffective assistance of counsel as they have developed in the criminal law context." *In re Simon,* 171 Mich App 443, 447; 431 NW2d 71 (1988). Because respondent did not file a motion for an evidentiary hearing in the family court on the issue of ineffective assistance, this Court's review is limited to mistakes apparent on the record. *People v Sabin (On Second Remand),* 242 Mich App 656, 658-659; 620 NW2d 19 (2000). "If review of the record does not support the [respondent's] claims, he has effectively waived the issue of effective assistance of counsel." *Id.* at 659.

In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court addressed the basic principles governing a claim of ineffective assistance of counsel, stating:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

Respondent argues that his counsel was ineffective because he failed to properly question the psychologist about how respondent's existing efforts at sobriety would improve his prognosis. We are not persuaded that the psychologist's opinion concerning respondent's prognosis would have been impacted by respondent's limited progress, particularly given respondent's continued use of substances. More importantly, even if the psychologist had acknowledged the steps that respondent had taken, respondent cannot establish that the result of the proceeding would have been different. Indeed, the family court recognized that respondent had made some progress and engaged in some services, but ultimately concluded that any benefit from the services was outweighed by respondent's continued substance use. Accordingly, given his continued substance abuse, lack of housing, and minimal compliance with the case service plan, respondent cannot establish that the result of the proceeding would have been different but for counsel's alleged error.

Respondent also argues that counsel was ineffective by failing to question the children's therapist about the traumatic effects on the children resulting from their trauma therapy and respondent's absence. Respondent offers an entirely speculative argument that the children's behavior could have been impacted by the traumatic effects of trauma therapy itself and his

absence. Respondent contends that the causal connection between these items should have been further explored.

The testimony of both the psychologist and the therapist supported a conclusion that the children were in need of permanence and stability and that without those the children's behavior would continue to deteriorate. The record supports a conclusion that no matter what the cause of the children's trauma, respondent was not in a position to provide permanence and stability for the children as necessary to minimize the trauma. Given his continued substance abuse, lack of housing, and minimal compliance with the case service plan, respondent cannot establish that the result of the proceeding would have been different but for counsel's alleged error.

Respondent further contends that counsel was ineffective by failing to call an independent witness from Harbor Hall to testify on his behalf. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). We cannot, however, insulate the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015).

Although respondent posits that having someone testify that he was benefiting from services could have impacted the family court's decision, he provides no evidence that anyone could or would have provided such positive testimony, particularly in light of the fact that he continued to use substances. Thus, respondent fails to establish the factual predicate of his claim and deficient performance. Moreover, as noted above, despite recognizing that respondent was attending services, the family court indicated that respondent's continued substance use negated any positive benefits that he may have received from those services. In whole, respondent cannot establish that the result of the proceeding would have been different but for counsel's alleged error.

We affirm.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jane M. Beckering

-6-