Wilder, P.J.
 

 Defendant appeals as of right from his bench trial conviction of possession with intent to deliver 225 to 649 grams of cocaine, MCL 333.7401(2)(a)(ii).*
 
 [1]
 
 He was sentenced to a term of imprisonment for 240 to 360 months. We affirm.
 

 
 *359
 
 I. FACTS AND PROCEDURAL HISTORY
 

 On October 21, 1998, at some time between 11:30 and 11:45 P.M., a Chevrolet Cavalier, driven by defendant, passed Officer John Hopkins of the Baroda-Lake Township Police Department, who was patrolling eastbound traffic on I-94.*
 
 [2]
 
 At that time, Officer Hopkins, who was parked in the median between the eastbound and westbound lanes of 1-94, noticed that defendant’s view was obstructed by objects hanging from the rearview mirror in violation of MCL 257.709(l)(c).
 
 [3]
 
 Officer Hopkins began to follow defendant because of this violation and observed defendant’s vehicle weaving in its lane and speeding, in vio
 
 *360
 
 lation of MCL 257.642(l)(a)
 
 [4]
 
 and MCL 257.628(4).
 
 [5]
 
 Officer Hopkins executed a traffic stop, informed defendant that he was stopped because of the view obstruction, and because his vehicle was weaving and speeding, and requested defendant’s driver’s license, vehicle registration, and proof of insurance. Defendant promptly provided these items to Officer Hopkins. Defendant also informed Officer Hopkins that he had borrowed the vehicle from his mother. After learning that the vehicle was not registered to defendant, Officer Hopkins asked defendant to get out of the vehicle, which he did. Officer Hopkins then patted defendant down for weapons and asked him to sit in the back of the patrol car.
 

 While in the patrol car, Officer Hopkins ran defendant’s name through the Law Enforcement Information Network (lein). The lein check indicated that defendant had two outstanding warrants for domestic violence and unpaid child support; therefore, defendant was placed under arrest. Following defendant’s arrest, Officer Hopkins searched the vehicle and found a black leather jacket with a bulge in the
 
 *361
 
 sleeve. Officer Hopkins then reached into the sleeve and pulled out a newspaper flyer wrapped around a bag containing 261 grams of cocaine.
 

 Before trial, defendant moved to suppress the evidence found in the vehicle on the grounds that (1) Officer Hopkins’ stated reasons for stopping defendant were a pretext, (2) no probable cause existed to stop defendant, (3) defendant did not provide consent to search the vehicle, and (4) under the totality of the circumstances, the cocaine must be suppressed as “fruits of the poisonous tree.” Following a suppression hearing held on January 7, 1999, the trial court denied defendant’s motion to suppress.
 

 Defendant’s bench trial commenced on March 25, 1999. During trial, defendant testified that he and his codefendants,
 
 [6]
 
 who were passengers in defendant’s vehicle at the time of the stop, had gone to Chicago to pay a parking ticket and then gotten haircuts from Kirk Hamill, a friend of defendant’s. Defendant also testified that that they arrived too late to pay the ticket, so he left $30 with Hamill and asked him to pay the ticket on defendant’s behalf. Defendant claimed that while they were at Hamill’s barbershop, Hamill used the telephone, received a telephone call shortly thereafter, and asked defendant to accompany him outside. Defendant further testified that once outside, Hamill requested defendant’s vehicle key, another vehicle arrived, defendant went back inside the barbershop, and then approximately fifteen to
 
 *362
 
 twenty minutes later, Hamill returned to the barbershop and informed defendant that he had put a package in defendant’s coat and that he needed it taken to a car wash in Muskegon Heights and given to a man named Kevin Washington. The trial court did not find defendant’s testimony to be believable, instead finding that defendant knew that the package contained contraband and that actual possession of the cocaine had been proved beyond a reasonable doubt. Accordingly, the trial court found defendant guilty as charged and sentenced him to twenty to thirty years’ imprisonment.
 

 n. THE STOP OF DEFENDANT
 

 A. THE INITIAL STOP OF DEFENDANT
 

 On appeal, defendant argues that the reasons given for the traffic stop were a pretext and that the trial court clearly erred in denying his motion to suppress the evidence. We disagree. This Court’s review of a lower court’s factual findings in a suppression hearing is limited to clear error, and those findings will be affirmed unless we are left with a definite and firm conviction that a mistake was made.
 
 People v Custer,
 
 242 Mich App 59, 64; 618 NW2d 75 (2000), rev’d in part on other grounds 465 Mich 319; 630 NW2d 870 (2001). See also
 
 People v Burrell,
 
 417 Mich 439, 448; 339 NW2d 403 (1983), and
 
 People v Lombardo,
 
 216 Mich App 500, 504; 549 NW2d 596 (1996). In addition, we review de novo the lower court’s ultimate ruling with regard to the motion to suppress.
 
 Custer, supra; People v Garvin,
 
 235 Mich App 90, 96; 597 NW2d 194 (1999).
 

 
 *363
 
 Officer Hopkins testified during the preliminary examination, the suppression hearing, and the trial that he intended to stop defendant because defendant’s view was being obstructed by air fresheners dangling from the rearview mirror of the vehicle. He also testified that defendant’s vehicle was weaving in its lane and speeding just before being stopped. The trial court observed a videotape of defendant’s encounter with Officer Hopkins, which revealed not only the dangling ornament from the rearview mirror of the vehicle, but also showed the vehicle going in excess of forty-five miles an hour in a construction zone. In addition, both defendant and his mother testified that there was at least one air freshener hanging from the review mirror. It is clear then, that the record amply supports the conclusion that defendant may have been in violation of MCL 257.709(l)(c), and that Officer Hopkins had probable cause to believe that defendant was in violation of MCL 257.642(l)(a) and MCL 257.628(4). Because Officer Hopkins had probable cause to believe defendant was in violation of three traffic laws, the stop was permissible.
 
 People v Kazmierczak,
 
 461 Mich 411, 421, n 8; 605 NW2d 667 (2000);
 
 People v Chambers,
 
 195 Mich App 118, 121-122; 489 NW2d 168 (1992). See also
 
 United States v Taylor,
 
 955 F Supp 763, 765 (ED Mich, 1997), quoting
 
 United States v Ferguson,
 
 8 F3d 385, 391 (CA 6, 1993) (“[S]o long as the officer has probable cause to believe the traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment.”), and
 
 Whren v United States,
 
 517 US 806, 813; 116 S Ct 1769; 135 L ED 2d 89 (1996) (expressly adopting the
 
 Ferguson
 
 test for determining the reasonableness of an automo
 
 *364
 
 bile stop). Consequently, on the basis of the record before us, we find that Officer Hopkins’ stop of defendant’s vehicle was legitimate.
 

 B. THE EXTENSION OF THE STOP
 

 Defendant also argues, for the first time on appeal, that because he was being stopped for a minor traffic violation and since he immediately provided Officer Hopkins with all requested documents, the stop should have only lasted as long as was necessary to write a citation. This issue was not raised below; therefore, it has not been preserved for review.
 
 People v Stanaway,
 
 446 Mich 643, 694; 521 NW2d 557 (1994);
 
 People v Hamacher,
 
 432 Mich 157, 168; 438 NW2d 43 (1989). Nonetheless, because defendant claims that this search violated his fundamental constitutional rights,
 
 People v Grant,
 
 445 Mich 535, 547; 520 NW2d 123 (1994);
 
 People v McRunels,
 
 237 Mich App 168, 172; 603 NW2d 95 (1999), and since the issue is a question of law and the necessary facts have been presented, we will review the issue.
 
 Grant, supra
 
 at 553;
 
 People v Lumsden,
 
 168 Mich App 286, 292-293; 423 NW2d 645 (1988).
 

 Defendant’s basic claim is that the cocaine was seized as a result of an unlawful search because the intervening detention between the stop and the finding of outstanding warrants was not justified. Specifically, defendant argues that because he cooperated with Officer Hopkins there was no reason to place him in the police car or to investigate any further. When a defendant claims that evidence should be suppressed as a result of an unlawful seizure, the court must ask whether the evidence was gained by
 
 *365
 
 exploitation of the alleged illegality.
 
 People v Lambert,
 
 174 Mich App 610, 616-617; 436 NW2d 699 (1989). Here, defendant was placed under arrest after a lein check revealed two outstanding warrants. After his arrest, the vehicle was searched. Accordingly, the vehicle was searched as a valid search incident to an arrest.
 
 People v Fernengel,
 
 216 Mich App 420, 422-423; 549 NW2d 361 (1996), citing
 
 New York v Belton,
 
 453 US 454, 460; 101 S Ct 2860; 69 L Ed 2d 768 (1981), and
 
 United States v Hudgins,
 
 52 F3d 115, 119 (CA 6, 1995). See also
 
 People v Bullock,
 
 440 Mich 15, 26; 485 NW2d 866 (1992). Because Officer Hopkins’ decision to place defendant in the patrol car in no way contributed to the finding of the cocaine, we find that suppression of the evidence was not warranted.
 
 Fernengel, supra
 
 at 423-424;
 
 Lambert, supra
 
 at 617-618.
 

 In addition, we find defendant’s reliance on
 
 People v Burrell,
 
 417 Mich 439; 339 NW2d 403 (1983), where our Supreme Court noted that “[a] detention following a stop for ... a minor [traffic] violation would be justified only for the length of time necessary to write a citation,”
 
 id.
 
 at 453, unpersuasive. There, the Court disapproved of the officer’s continued detainment of the defendants after a lein check indicated that the driver had a valid driver’s license and that the vehicle was not stolen.
 
 Id.
 
 However, the Court expressed no opinion regarding whether an officer could run a lein check as a matter of course and, instead, seemed to suggest that a lein check was an appropriate way to ensure that a stopped driver had a valid driver’s license and was not in possession of a stolen vehicle.
 
 Id.
 
 Here, defendant stated he was driving a vehicle registered to his mother. Thus, it was appropriate for
 
 *366
 
 Officer Hopkins to run a lein check to verify the identity of the registered owner.
 

 Finally, we note that a review of Michigan cases demonstrates a recognition that the running of lein checks of vehicle drivers is a routine and accepted practice by the police in this state. See
 
 People v Combs,
 
 160 Mich App 666, 668; 408 NW2d 420 (1987) (lein check conducted on driver of vehicle stopped in median of highway). See also
 
 People v Hubbard,
 
 209 Mich App 234; 530 NW2d 130 (1995), and
 
 People v Oliver,
 
 192 Mich App 201, 203; 481 NW2d 3 (1991) (vehicle stopped after it was discovered the license plate belonged to another vehicle);
 
 Young v Barker,
 
 158 Mich App 709, 714; 405 NW2d 395 (1987) (lein check performed when vehicle stopped on highway and the plaintiff did not have a license);
 
 People v Bell,
 
 74 Mich App 270, 276; 253 NW2d 726 (1977) (a LEIN check two days before justified the officer’s stop of the driver’s vehicle);
 
 People v Portman,
 
 73 Mich App 366, 369; 251 NW2d 589 (1977) (rolling lein check performed on vehicle with outdated license plate).
 

 In addition, we note that in at least two circuits, the United States Court of Appeals has held that an officer conducting a routine traffic stop may run computer checks on the driver’s license, the vehicle registration papers, and whether the driver has any outstanding warrants or the vehicle has been reported stolen. See
 
 United States v Mendez,
 
 118 F3d 1426, 1429 (CA 10, 1997), citing
 
 United States v Elliot,
 
 107 F2d 810, 813 (CA 10, 1997);
 
 United States v White,
 
 81 F3d 775, 778 (CA 8, 1996). See also
 
 Taylor, supra
 
 at
 
 *367
 
 766.
 
 [7]
 
 Once the computer check “confirms the driver has produced a valid license and proof of entitlement to operate the car, the driver must be permitted to proceed on his way, without further delay by police for additional questioning.”
 
 Mendez, supra,
 
 citing
 
 United States v Anderson,
 
 114 F3d 1059, 1064 (CA 10, 1997). Here, the lein check indicated that defendant had two outstanding warrants. In addition, Officer Hopkins testified that the lein check took about five minutes to complete and this testimony was not contradicted by defendant; instead, defendant simply testified that Officer Hopkins told him it would take about ten to fifteen minutes to confirm the warrants after they were discovered by lein. Thus, Officer Hopkins had a valid reason to extend the stop and to continue to ask defendant questions.
 
 Mendez, supra
 
 at 1429-1430, citing
 
 Anderson, supra
 
 at 1064;
 
 Elliot, supra
 
 at 813. Further, as stated in
 
 People v Walker,
 
 58 Mich App 519, 523-524; 228 NW2d 443 (1975), we find that
 

 [a] lein check is an unobtrusive investigative tool employed by the police to retrieve information regarding an individual’s driving record and to determine whether there are any outstanding warrants for his arrest—all matters of public record. As such, a lein check does not involve an unlawful disregard for individual liberties.
 

 Accordingly, because this amount of time is a minimal invasion in light of the substantial governmental
 
 *368
 
 interest in arresting citizens wanted on outstanding warrants, see
 
 State v Lopez,
 
 873 P2d 1127, 1133 (Utah, 1994), we find Officer Hopkins’ use of the LEIN check in this case did not violate defendant’s constitutional rights.
 

 in. INEFFECTIVE ASSISTANCE OF COUNSEL
 

 Defendant also claims that he was denied the effective assistance of counsel by his counsel’s decision not to call certain witnesses to testify on his behalf. Because defendant failed to move for a new trial or request a Ginther
 
 [8]
 
 hearing below, our review of this issue is limited to mistakes apparent on the appellate record.
 
 People v Sabin (On Second Remand),
 
 242 Mich App 656, 659; 620 NW2d 19 (2000), citing
 
 People v Marji,
 
 180 Mich App 525, 533; 447 NW2d 835 (1989). If the record does not contain sufficient detail to support defendant’s ineffective assistance claim, then he has effectively waived the issue.
 
 Sabin, supra.
 

 Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy.
 
 People v Rockey,
 
 237 Mich App 74, 77; 601 NW2d 887 (1999), citing
 
 People v Mitchell,
 
 454 Mich 145, 164; 560 NW2d 600 (1997), and
 
 People v Barnett,
 
 163 Mich App 331, 338; 414 NW2d 378 (1987). Further, “a defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel’s error, the outcome of the trial would
 
 *369
 
 have been different.”
 
 Sabin, supra
 
 at 659, citing
 
 Stanaway, supra
 
 at 687. Here, defendant claims that his counsel was ineffective because counsel failed to call the codefendants, Hamill, or defendant’s mother as witnesses. However, the record does not suggest how any of these witnesses would have benefited defendant’s case, and defendant has not provided this Court with affidavits indicating what the proposed testimony of the codefendants or Hamill would have been. Further, with regard to the character evidence that would have been presented by defendant’s mother, counsel attempted to offer this testimony; however, the trial court correctly sustained the prosecution’s objection that it was irrelevant testimony.
 
 [9]
 
 Therefore, defendant has failed to overcome the presumption that his counsel’s decision not to call those witnesses was sound trial strategy.
 
 Sabin, supra-, Rockey, supra.
 

 IV. SENTENCING
 

 A. PROPORTIONALITY OF SENTENCE
 

 Defendant next argues that his sentence is disproportionate. However, defendant was sentenced to the mandatory minimum sentence of 240 months, which, as a legislatively mandated sentence, is presumptively proportionate.
 
 People v Williams,
 
 189 Mich App 400, 404; 473 NW2d 727 (1991). The factors raised by defendant in an effort to reduce the sentence—strong
 
 *370
 
 family background, prior work history, and no prior drug-related offenses—do not overcome this presumption of proportionality.
 
 People v Daniel,
 
 207 Mich App 47, 54; 523 NW2d 830 (1994). Remorse, another factor raised by defendant, is also a factor that the Michigan Supreme Court has disapproved of as a basis for departure from the mandatory minimum sentence.
 
 People v Daniel,
 
 462 Mich 1, 6; 609 NW2d 557 (2000).
 

 B. NEW SENTENCING GUIDELINES
 

 Defendant’s final argument is that he should have been sentenced under the new sentencing guidelines. This issue is without merit. Defendant’s sentence was based on events that occurred on October 21, 1998. This Court has clearly stated that because the legislative intent of MCL 769.34
 
 [10]
 
 was that the statute would only have prospective application, the new guidelines will only be applied to offenses committed on or after January 1, 1999. See
 
 People v Reynolds,
 
 240 Mich App 250, 253-254; 611 NW2d 316 (2000). See also Administrative Order No. 1998-4, 459 Mich clxxv, and Administrative Order No. 1988-4, 430 Mich ci.
 

 
 *371
 
 V. CONCLUSION
 

 In sum, (1) the initial stop of defendant was legitimately based on probable cause that three traffic violations had been committed, (2) Officer Hopkins did not violate defendant’s constitutional rights by running a letn check of his driver’s license, which check revealed two outstanding warrants, (3) defendant has failed to persuade us that he did not receive effective assistance of counsel, (4) defendant’s sentence was proportionate, and (5) defendant was properly sentenced under the judicial sentencing guidelines of 1988.
 

 Affirmed.
 

 [1]
 

 MCL 333.7401 provides, in part:
 

 (1) Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance ....
 

 
 *359
 
 (2) A person who violates this section as to:
 

 (a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug . . . and:
 

 (ii) Which is in an amount of 225 grams or more, but less than 650 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 20 years nor more than 30 years.
 

 [2]
 

 Officer Hopkins was actually employed by both the Baroda-Lake Township Police Department and the Berrien County Sheriffs Department. On the night in question he was working as an officer for the police department.
 

 [3]
 

 MCL 257.709(l)(c) provides, in part:
 

 (1) A person shall not drive a motor vehicle with any of the following:
 

 (c) A dangling ornament or other suspended object except as authorized by law which obstructs the vision of the driver of the vehicle.
 

 [4]
 

 MCL 257.642(l)(a) states, in part:
 

 (1) When a roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent with this act shall apply:
 

 (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver first ascertained that the movement can be made with safety.
 

 [5]
 

 MCL 257.628(4) states:
 

 A person who fails to observe an authorized speed or traffic control sign, signal, or device is responsible for a civil infraction.
 

 [6]
 

 The codefendants were acquitted of ail charges and are not a part of this appeal.
 

 [7]
 

 We also note that several states have adopted this approach. See
 
 State v Ybarra,
 
 156 Ariz 275, 276; 751 P2d 591 (Ariz App, 1987);
 
 People v Rodriguez,
 
 945 P2d 1351, 1360 (Colo, 1997);
 
 People v Eyler,
 
 132 Ill App 3d 792, 798; 87 Ill Dec 648; 477 NE2d 774 (1985);
 
 State v DeMarco,
 
 263 Kan 727, 729, 733; 952 P2d 1276 (1998);
 
 State v Bartholomew,
 
 258 Neb 174, 179; 602 NW2d 510 (1999);
 
 State v Lopez,
 
 873 P2d 1127, 1133 (Utah, 1994).
 

 [8]
 

 People v Ginther,
 
 390 Mich 436, 443; 212 NW2d 922 (1973).
 

 [9]
 

 Defendant asserts that his mother would have testified that he was a professional singer; however, because the prosecution never asserted financial status as a motive for transporting the drugs, defendant’s profession or ability to make a living was irrelevant to this case. See MRE 401 and 402.
 

 [10]
 

 MCL 769.34 states, in part:
 

 (1) The sentencing guidelines promulgated by order of the Michigan supreme court shall not apply to felonies enumerated in part 2 of chapter XVII committed on or after January 1, 1999.
 

 (2) Except as otherwise provided in this subsection or for a departure from the appropriate minimum sentence range provided for under subsection (3), the minimum sentence imposed by a court of this state for a felony enumerated in part 2 of chapter XVH committed on or after January 1, 1999 shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed.