# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DEZMEN FAQUA,

       Defendant-Appellant.

UNPUBLISHED
July 27, 2017

No. 331478
Wayne Circuit Court
LC No. 15-006214-01-FC

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

In a bench trial, the trial court convicted defendant of second-degree murder of Christopher Reed ("Reed"), MCL 750.317, assault with intent to do great bodily harm less than murder of Reed's son ("CJ"), MCL 750.84, carjacking, MCL 750.529a, armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 25 to 50 years in prison for the second-degree murder conviction, 3 to 15 years in prison for the assault conviction, 15 to 30 years in prison for the carjacking and armed robbery convictions, and three to seven years in prison for the felon-in-possession conviction, all to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

Defendant's convictions arise from a fatal shooting at a Wendy's restaurant in Detroit. Reed and his two sons, nine-year-old CJ and eight-year-old CS, were in the drive-thru lane waiting for food when they were approached on foot by two gunmen, who demanded Reed's possessions. Reed was ultimately shot and killed, and CJ was shot in the thumb as he tried to protect his father. After the shooting, the two men drove Reed's car, with the children inside, to a dark neighborhood, where they stole Reed's money, Rolex watch, and glasses. Both children subsequently identified defendant as the man who stood on the passenger's side of their car during the shooting. Defendant was also identified by a jewelry store employee as an individual who attempted to sell him a Rolex watch the day after the crime. At trial the employee identified a photograph of a watch as similar to the one defendant attempted to sell him. Reed's fiancé testified that the photograph depicted Reed's watch.

-1-

Defendant argues on appeal that his trial counsel was ineffective for failing to investigate and offer expert testimony regarding the reliability of eyewitness identification, particularly with respect to Reed's two young sons. Defendant did not raise this claim of ineffective assistance of counsel in a motion for a new trial or request for a *Ginther*[1] hearing in the trial court. Defendant filed a motion to remand in this Court, but the motion was denied.[2] Therefore, our review is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

To prevail on a claim of ineffective assistance of counsel a defendant must show "that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The decision regarding what witnesses to call is presumed to be a matter of trial strategy. *People v Jackson* (*On Reconsideration*), 313 Mich App 409, 432; 884 NW2d 297 (2015). Failure to call a witness will constitute ineffective assistance of counsel only if it deprives a defendant of a substantial defense. *Id*. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotations and citation omitted). Similarly, to establish prejudice, a defendant is required to show that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694.

In this case, defendant cannot overcome the presumption that defense counsel engaged in reasonable trial strategy by attempting to attack and undermine the credibility and reliability of the witness testimony through cross-examination and argument at trial. Defendant has submitted two affidavits from psychologists on appeal in support of his claim, one from a clinical and forensic psychologist, David W. Thompson, PhD, and the other from a cognitive psychologist, Colleen M. Seifert, PhD. We have reviewed the affidavits as well as the lower court record and conclude that defendant has failed to establish that the proposed testimony of Dr. Thompson and Dr. Seifert would have made a difference in the outcome of the trial.

Defense counsel's strategy at trial was to challenge the reliability of the children's identifications of defendant as the gunman on the passenger side of Reed's car during the shooting. The record reveals that defense counsel extensively and effectively cross-examined the child eyewitnesses, and argued that their identifications of defendant were not credible. Although Dr. Seifert avers that she would have testified about the effects of short exposure time and vantage points on identification, the children's opportunity to view defendant before, during, and after the shooting, when defendant rode in Reed's car with the children, and when defendant stole Reed's possessions, was clear from the record. Moreover, defense counsel repeatedly cross-examined the children on their vantage points.

---

[1]*People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Faqua*, unpublished order of the Court of Appeals, entered December 21, 2016 (Docket No. 331478).

Dr. Seifert also avers that she would have testified about the children's likelihood of rejecting lineups that did not contain the suspect, but the record demonstrated that neither child waivered about the identification of defendant. Rather, both children separately and immediately recognized him among the six photographs presented by the officer in charge. Dr. Seifert offered statistics about the dissipation of memory over time, but defense counsel also repeatedly elicited evidence and argued that details of the children's accounts changed over time. In its factual findings, the trial court acknowledged the differences and its understanding that memories fade.

Dr. Seifert and Dr. Thompson both address the effect of post-event information on memory in their affidavits. But, again, defense counsel repeatedly questioned the children about these influences and argued that they were coached by family and their testimony was tainted. The trial court rejected any claim that the children were coached, explaining that discussions with family in this circumstance, when children saw their father murdered, were reasonable. Dr. Seifert explains that a witness is more likely to recall observations of actions than other specific details. However, defense counsel elicited testimony that the boys forgot specific details, and he specifically focused on the biggest discrepancy in their memories of defendant's actions—that they initially stated in police interviews that defendant did not shoot and later testified at trial that he did.

Although Dr. Seifert recommends police practices to avoid suggestion during lineups, defendant does not argue that the police procedure used for the children to identify defendant's picture was somehow suggestive. Moreover, defense counsel questioned witnesses about the risk that the children's identifications at the police station were influenced by discussions about the shooting in the car on the way to the station and whether the boys were shown photographs of the perpetrators on Instagram at home before the lineup. Finally, Dr. Thompson avers that the exposure to repeated and suggestive interview techniques decreased the reliability of the identifications. Defense counsel similarly argued that the identifications were tainted and the trial court acknowledged that the police interviews of the children were poorly administered, but the trial court nevertheless ruled that even though memories fade, and witnesses see and remember events differently, the witnesses are not necessarily untruthful.

This Court does not substitute its judgment for that of defense counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). While defense counsel could have chosen to present the proffered expert testimony explaining the unreliability of eyewitness identification to buttress the misidentification defense, defense counsel's choice to pursue the defense through cross-examination and argument did not fall below an objective standard of reasonableness.

Moreover, as the trial court observed, other evidence corroborated CJ's and CS's testimony and identification of defendant. Both children testified consistently that the perpetrators stole Reed's Rolex watch. An employee at a jeweler testified that defendant attempted to sell him a Rolex watch the very next day. At trial, the employee identified Reed's watch as the same or similar to the watch that defendant tried to sell him. In addition, CJ and CS testified at trial that both perpetrators carried and fired guns at Reed's car in the Wendy's drive-thru. Defense counsel attempted to impeach the boys' testimony by citing earlier statements that

defendant did not fire a gun. But the evidence technician recovered shell casings from two different caliber firearms and a bullet hole was observed in the passenger's side door, which permitted the trier of fact to infer that the boys' trial testimony was accurate. Defendant cannot establish that he was denied a substantial defense or that, but for defense counsel's failure to offer expert testimony regarding the reliability of eyewitness identification, it is reasonably probable that the outcome of trial would have been different. Absent any prejudice, remand for a *Ginther* hearing is not required.

Affirmed.

/s/ Jane E. Markey
/s/ Patrick M. Meter