*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
December 22, 2022

v

MATTHEW RICHARD STAGGS,

        Defendant-Appellant.

No. 359507
Van Buren Circuit Court
LC No. 2021-023088-FH

Before: SHAPIRO, P.J., and BORRELLO and YATES, JJ.

PER CURIAM.

Defendant appeals as on leave granted, following a remand by the Supreme Court.[1] Defendant challenges the trial court's denial of his motion to suppress evidence of drugs seized during an extended traffic stop. For the reasons stated in this opinion, we reverse.

## I. BACKGROUND

The traffic stop at issue occurred on March 23, 2021. Earlier that same day, police officers received an anonymous tip that there was "a lot of trafficking going in and out" of an apartment unit and the tipster believed that this indicated narcotics activity taking place at that apartment. Police detectives went to the apartment complex identified in the tip, and on the day in question there were several vehicles at the property including a silver Chevy Silverado. One of the detectives conducting surveillance saw a male come out of the residence and walk to the Silverado. The man, who was later identified as defendant, "got into the back" of the vehicle; he then went to the passenger side of the vehicle and laid down on his back, underneath the truck. According to the observing officer, it looked like defendant was "doing something underneath the pickup truck." Defendant then stood up, got in the driver's seat, and drove away.

This information—about seeing the man leave the residence and go under his truck—was given to Detective Ryan McFanin, who then began following the truck. McFanin was driving an

---

[1] *People v Staggs*, 974 NW2d 200 (Mich, 2022).

"undercover" police vehicle, and he contacted Deputy Larry Weers to obtain the truck's license plate number. Weers, who was driving a patrol vehicle, began following the truck at a distance and then more closely in order to get the license plate number. Weers testified at the preliminary examination that unless he observed a traffic violation, he had no intent of stopping the vehicle. However, just as Weers had obtained the truck's license plate number and was about to pull away, the truck stopped in the roadway.

At that point, Weers activated his lights and initiated a traffic stop. When asked why he stopped in the roadway, defendant told Weers that the patrol vehicle was following him too closely and that he moved to the right edge of the road and stopped so that the deputy could pass him. Defendant provided his license, registration and proof of insurance, all of which were found to be valid. Weers "completed a file check" on defendant's documentation, and he also ran defendant's license plate through LEIN and the Secretary of State. Defendant did not have any warrants for his arrest, but he did have "an officer safety caution." Weers never issued a citation to defendant.

McFanin stopped his vehicle once he saw that Weers had initiated a stop. At McFanin's instruction, Weers told defendant to step out of his vehicle. He also had defendant step to the back of the vehicle, where he told defendant that he was stopped for impeding traffic. Defendant asked if he was "free to go," and Weers replied, "Not yet." McFanin then joined the conversation and began talking to defendant. McFanin told defendant that he was being "detained at that time" because defendant was under investigation, though McFanin could not tell defendant what the investigation involved. McFanin testified at the preliminary examination that defendant was detained because McFanin had requested a K-9 unit to perform a narcotics sniff of defendant's vehicle.

After McFanin was informed that it may take some time for the K-9 unit to arrive, he conducted a *Terry*[2] pat down of defendant that did not any indicate any weapons. When asked if he had drugs, defendant said that he had marijuana in his truck and proceeded to show it to McFanin. According to McFanin, the amount of marijuana did not appear to be more than was legal to possess. When asked if there were any other narcotics, defendant said that there were not. Defendant denied consent for the police to search his vehicle. When the K-9 unit arrived, defendant was transferred to the backseat of an officer's vehicle. The dog then sniffed defendant's vehicle and had a positive hit. On the undercarriage of the vehicle, on the passenger side, police found a small magnetic box containing what appeared to be methamphetamine. The suspected methamphetamine, weighing 4.7 grams, was field-tested and it tested positive for methamphetamine. From the time of the initial stop to the arrival of the K-9 unit, defendant was detained for about 43 minutes.

The prosecutor charged defendant, as a second-offense habitual offender, MCL 769.10, with possession of methamphetamine, MCL 333.7403(2)(b)(*i*). At the preliminary hearing, defendant asked the district court to dismiss the charge on the basis that defendant was unconstitutionally detained for over 40 minutes, long after the conclusion of the traffic stop, while awaiting the arrival of the K-9 unit. Characterizing defendant's motion as a suppression motion, the district court considered defendant's constitutional argument and denied the motion. The

---

[2] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

district court acknowledged caselaw holding that a traffic stop cannot be extended beyond what is reasonable for the traffic stop, but the court distinguished caselaw involving "cold stops" on the basis of nothing but a traffic violation and the facts of the present case, which started with the information provided by the narcotics team that defendant had been seen leaving an apartment complex that was suspected of narcotics activity, and that defendant had engaged in suspicious behavior underneath his vehicle. The district court further concluded that there was probable cause to bind defendant over for trial, given what the search revealed.

In the circuit court, defendant file a motion to quash seeking to suppress all evidence found during his detention and dismiss the case. Defendant argued that the police officers who detained him did not have a reasonable suspicion to believe that any criminal offense had occurred such that they could lawfully extend the traffic stop and detain him for 43 minutes in order for a K-9 unit to arrive. The prosecution argued that the police officers lawfully stopped defendant's vehicle because he stopped in the roadway. The prosecution also argued that the police officers had a reasonable suspicion to justify prolonging defendant's detention on the basis of the surveillance that observed defendant entering and exiting a suspect-drug house and crawling under his vehicle outside that residence, as well as defendant's decision to stop his vehicle in the roadway and his subsequent behavior and comments.

At the hearing held on defendant's motion, the parties stipulated to the admission of the videos captured by various police officers during the stop, including the video footage from Weers's dash camera. After hearing oral argument, the trial court determined that, considering the totality of the circumstances, the police officers had a reasonable suspicion that "defendant was involved in possessing and/or delivering and/or transporting controlled substances." The court also determined that the length of the stop was reasonable. Accordingly, the court denied defendant's motion to quash, which it deemed equivalent to a motion to suppress.

## II. DISCUSSION

On appeal, defendant does not dispute that the police officers had authority to stop him for a traffic violation and investigate that violation. Instead, defendant argues that the traffic stop became unlawful when he was detained until the K-9 unit arrived because that went beyond the scope of the traffic stop, which did not reveal new information supporting a reasonable suspicion of narcotics activity. We agree.[3]

"Both the United States Constitution and the Michigan Constitution guarantee the right of the people to be free from unreasonable searches and seizures." *People v Moorman*, 331 Mich

---

[3] We review de novo a trial court's ruling on motion to suppress. *People v Davis*, 250 Mich App 357, 362; 649 NW2d 94 (2002). A trial court's factual findings are reviewed for clear error. *Id*. "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). We review de novo the trial court's interpretation of the law or the application of a constitutional standard. See *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001).

App 481, 485; 952 NW2d 597 (2020). A seizure occurs "when, in view of all the circumstances, a reasonable person would conclude that he or she was not free to leave." *People v Kavanaugh*, 320 Mich App 293, 300; 907 NW2d 845 (2017). "The lawfulness of a search or seizure depends on its reasonableness." *Moorman*, 331 Mich App at 485 (quotation marks and citation omitted). "A traffic stop does not violate the Fourth Amendment when a police officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *Id*. (quotation marks and citation omitted).

"[A] seizure justified only by a police-observed traffic violation" becomes "unlawful if it is prolonged beyond the time reasonably required to complete [the] mission of issuing a ticket for the violation." *Rodriguez v United States*, 575 US 348, 350-351; 135 S Ct 1609; 191 LEd2d 492 (2015). The *Rodriguez* Court held that tasks not related to the traffic-stop mission, such as dog sniffs, are therefore unlawful if they "add[ ] time" to the stop. *Id*. at 357. As summarized by this Court:

> [I]n *Rodriguez* . . . , there was debate about whether requiring a driver to wait for a dog sniff after a traffic stop had concluded should be considered a seizure separate from the traffic stop itself or whether the basis for the traffic stop could encompass a brief additional delay for a dog sniff. In *Rodriguez*, the United States Supreme Court definitively resolved the debate, holding that "a dog sniff is not fairly characterized as part of the officer's traffic mission." The Court explained that although police officers "may conduct certain unrelated checks during an otherwise lawful traffic stop," they "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." The Court held, "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Once the constitutionally sound basis for the traffic stop has been addressed, any further extension of the detention in order to conduct "[o]n-scene investigation into other crimes" or for any other reason is a Fourth Amendment violation unless new facts come to light during the traffic stop that give rise to reasonable suspicion of criminal activity. [*People v Kavanaugh*, 320 Mich App 293, 300-301; 907 NW2d 845 (2017) (citations omitted).]

In other words, a stop may be lawfully extended when there is independent reasonable suspicion of criminal activity to justify detaining the individual for a dog sniff. See *Rodriguez*, 575 US at 357-358.

The question in this case, therefore, is whether the officers had a reasonable suspicion that defendant was engaged in narcotics activity such that they could lawfully prolong the traffic stop. As indicated in *Kavanaugh*, whether continued detention is permissible after investigation of a traffic infraction has been completed often involves whether "new facts" are revealed during the traffic stop that warrant extending the detention. See *id*. at 301. See also *People v Williams*, 472 Mich 308, 315 & n 9; 696 NW2d 636 (2005) (considering a speeding stop and "evolving circumstances" faced by the officer during the stop). We also recognize, however, that a vehicle stop may from its inception be based on reasonable suspicion of activity other than a traffic violation, such as reasonable suspicion of drug activity. See e.g., *People v Nelson*, 443 Mich 626, 632; 505 NW2d 266 (1993) (involving a vehicle stopped after leaving a known drug house).

The prosecution does not argue that the officers had a reasonable suspicion from the outset of the traffic stop that defendant was engaged in narcotics activity. Indeed, the officers testified that the stop was initiated solely because of the traffic violation. Rather, the prosecution contends that when the preexisting information regarding the narcotics surveillance is considered *in combination* with defendant's behavior and statements during the traffic stop, there was a reasonable suspicion that defendant was engaged in narcotics activity. Conceptually, the prosecution's approach is sound because it properly considers the totality of the circumstances. See *Kavanaugh*, 320 Mich App at 301 ("Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances.") (quotation marks and citation omitted). However, a necessary premise to the prosecution's argument is that the new information obtained by the officers during the traffic stop does in fact support a reasonable suspicion of criminal activity. For the reasons discussed below, we conclude that it does not.

The prosecution specifically relies on the following as the new set of suspicion circumstances that justified prolonging the stop: (1) defendant stopped his vehicle in the roadway, (2) defendant was allegedly "very confrontational" with Weers, and (3) defendant admitted to delivering marijuana to a friend at the apartment being surveilled by the narcotics unit. Assuming for purposes of this appeal that defendant did indeed commit a traffic violation, defendant's decision to stop his truck was not so evasive or erratic as to support a reasonable suspicion of criminal activity. Weers's patrol vehicle had become exceedingly close while following defendant because he was struggling to observe defendant's license plate number. Defendant explained to Weers that he pulled over to the side of the road so that Weers could pass him. There were no other vehicles in the roadway when defendant stopped his vehicle, and his vehicle did not actually impede traffic. And contrary to the trial court's finding, defendant did not "suddenly" stop his vehicle, but instead gradually slowed down and veered to the side of the roadway.[4] Further, being closely followed by the police would be unsettling to an average motorist, and a motorist's attempt to resolve that situation is not necessarily indicative of criminal activity.

As for defendant's behavior, Weers described defendant as irritated and upset. By analogy, in *Kavanaugh* we observed that nervousness during a traffic stop is " 'of limited value' in determining whether reasonable suspicion exists because most citizens exhibit signs of nervousness when confronted by law enforcement whether they are innocent or guilty and absent 'significant knowledge of a person, it is difficult, even for a skilled police officer, to evaluate whether a person is acting normally for them or nervously.' " *Kavanaugh*, 320 Mich App at 304, quoting *United States v Simpson*, 609 F3d 1140, 1147-1148 (CA 10, 2010). This reasoning applies with equal force to citizens who exhibit irritation during a traffic stop. Moreover, while defendant can fairly be described as irritated by the traffic stop, he at no time exhibited aggressive behavior toward the officers or even raised his voice. To the contrary, he complied with their commands while engaging in a rational discussion with the officers as to what was happening and why. In short, defendant told the officers that he thought there was no proper reason for the stop. And it

---

[4] We need not defer to the trial court's findings that are based on video evidence because the trial court is in no better position than us to assess that evidence. See *Kavanaugh*, 320 Mich App at 298.

would be circular and inherently problematic to conclude that expressing disagreement with the lawfulness of an officer's action may be used to create a reasonable suspicion of criminal activity.

Lastly, defendant does not dispute the trial court's finding that he admitted to delivering marijuana to a friend at the apartment unit earlier that day. According to the prosecution, the statement occurred immediately following the *Terry* pat-down search while defendant was showing McFanin the marijuana in defendant's truck. The prosecution does not explain how the marijuana or defendant's statement support a reasonable suspicion of criminal activity. It is clear that the officers were not investigating the trafficking of marijuana, which became legal in Michigan in 2018. And McFanin testified that defendant appeared to be in possession of a legal amount of marijuana.

Perhaps more importantly, the *Terry* pat down occurred well into defendant's detention while the officers waited for the K-9 unit to arrive, and information obtained after the officers decided to prolong the stop cannot retroactively establish a reasonable suspicion. See *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996) ("A valid investigatory stop must be justified at its inception . . . ."); *People v Steele*, 292 Mich App 308, 314; 806 NW2d 753 (2011) ("In determining reasonableness [of an officer's suspicion], the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable precaution to suspect criminal activity."). Indeed, this can also be said with respect to defendant's alleged "confrontational" behavior because McFanin had ordered the K-9 unit before he even approached defendant and Weers and joined their conversation.

When we consider what actually occurred in this case, it is clear that the officers unlawfully prolonged a completed traffic stop. McFanin did not determine that a dog sniff was warranted based on new information he learned during the traffic stop. Rather, he made that decision once Weers decided to initiate the traffic stop. In other words, the officers immediately moved from a traffic stop into a drug investigation, and we are unaware of any caselaw that would support this course of action. Although a traffic stop supported by probable cause is valid even if the stop is a pretext for some other reason, the officers must nonetheless have an independent reasonable suspicion of criminal activity to prolong the defendant's detention for purposes of a dog sniff. See *Kavanaugh*, 320 Mich App at 299-302. Because the prosecution does not argue that the officers had a reasonable suspicion that defendant was engaged in narcotics activity before the traffic stop was initiated, we must necessarily consider whether the new information obtained by the officers supported such a suspicion. But for the reasons discussed, the new information provided weak, if any, indicia of criminal activity, and was mostly obtained after McFanin had ordered the K-9 unit.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Christopher P. Yates