*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BJP.

---

WILLIAM ROBBINS,

                 Petitioner-Appellee,

v

BJP,

                 Respondent-Appellant.

UNPUBLISHED
April 20, 2023

No. 363409
Kalkaska Probate Court
LC No. 22-010814-MI

---

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the probate court order requiring her to receive involuntary mental health treatment. Following a hearing on the petition for mental health treatment, the probate court found respondent to be a "person requiring treatment" under MCL 330.1401(1)(a) and (c). Respondent contests those findings on appeal. We affirm.

## I. BACKGROUND

In early September 2022, petitioner, a peace officer, requested that respondent be hospitalized because she had called the Kalkaska Village Police Department 37 times since July 31, 2022, to report that the "Illuminati" were attacking her, pulling out her hair, and breaking her teeth. The petition noted that these 37 calls did "not include the number of calls" made to the Kalkaska Sheriff's Department or to the Michigan State Police. Petitioner alleged that respondent believed the "Illuminati" were hurting her through her "TENS[1] unit" and that "demons" inserted

---

[1] The parties never clarified what was meant by a "TENS unit," but it seems that "TENS" is an acronym for "Transcutaneous Electrical Nerve Stimulation," which is a therapy that "involves the use of low voltage electrical current to provide pain relief" through the placement of a "small device [that] delivers the current at or near nerves." See Cleveland Clinic, *Transcutaneous*

a transmitter in her head to torment her. According to petitioner, respondent was not receiving any mental health treatment, although she had been previously involuntarily committed in 2020 for making more than 80 emergency calls to Grand Traverse Law Enforcement.

The probate court held a hearing on the petition on September 20, 2022. Dr. Jonathan Dozeman, a psychiatrist at Pine Rest Christian Mental Health Services (Pine Rest), testified as an expert in the field of psychiatry. Dr. Dozeman met with respondent and diagnosed her with schizophrenia. Dr. Dozeman explained that respondent was supposed to be taking an antipsychotic medication as recently as 2020, but respondent had not been taking her medication or receiving any treatment. Dr. Dozeman testified that respondent had called the police 37 times since July 31, 2022, to report that she was being attacked by the Illuminati. On one occasion, respondent dragged her furniture outside of her house and stabbed it with a knife because she thought there was a "dark liquid in the furniture." Dr. Dozeman testified that upon respondent's arrival at Pine Rest, respondent "presented as very disorganized with a tangential thought process." Dr. Dozeman stated that respondent did not believe she had a mental illness, and she was unwilling to take any of the recommended psychotropic medication for treatment. Respondent was responding to "internal stimuli" and was documented throughout the day to be having conversations with herself. At night, respondent did not sleep well. For instance, the night before the hearing, respondent walked restlessly around the unit and talked to herself as she stared at a wall. Dr. Dozeman testified that respondent posed an inadvertent risk to herself given her level of paranoia, but she did not pose a risk to others. Dr. Dozeman recommended that respondent be hospitalized, and stated that hospitalization was the least restrictive form of treatment available.

Respondent testified that she did not have schizophrenia because such a diagnosis "means you hear—you hear voices in your head," and the voices she heard were "not coming from my head" but were "coming from sources in the distance." Respondent testified that she was not a danger to herself or other people, and she asked the court to dismiss the petition and allow her to leave the hospital.

The court found respondent to be a person requiring treatment under MCL 330.1401(1)(a) and (c). The court ordered that respondent receive combined hospitalization and assisted outpatient treatment for no longer than 180 days, with up to 60 days of hospitalization. This appeal followed.

## II. PERSON REQUIRING TREATMENT

Respondent argues that the trial court erred by finding that she qualified as a "person requiring treatment" under MCL 330.1401(1)(a) or (c). We disagree.

A probate court's dispositional rulings are reviewed for an abuse of discretion, and its factual findings are reviewed for clear error. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Id*. Clear error exists when this Court is left with a definite

---

*Electrical Nerve Stimulation (TENS)*, https://my.clevelandclinic.org/health/treatments/15840-transcutaneous-electrical-nerve-stimulation-tens.

and firm conviction that a mistake has been made, even if there is evidence to support the finding. *Id*. This Court reviews de novo matters of statutory interpretation. *Id*.

A probate court must find that an individual is a "person requiring treatment" before it can order the individual to receive involuntary mental health treatment. See *id*. at 385. MCL 330.1401(1) provides, in relevant part, that the phrase "person requiring treatment" means:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure . . . herself, . . . and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

> \* \* \*

> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused . . . her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of . . . her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

A judge or jury cannot "find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence." MCL 330.1465. Clear and convincing evidence

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).]

"Evidence may be clear and convincing despite the fact that it has been contradicted." *Id*. (Quotation marks and citation omitted.)

Respondent argues that she did not qualify as a person requiring treatment under MCL 330.1401(1)(a) because (1) there was no evidence that respondent was at risk of unintentionally seriously physically injuring herself and (2) there was no evidence that she had engaged in acts or made threats that supported an expectation of self-harm. We disagree.

The probate court heard testimony from Dr. Dozeman, who stated that since July 31, 2022, respondent had called the police 37 times to report being attacked by the Illuminati, and respondent thought that the Illuminati were putting things inside of her body and inside of her home. Dr. Dozeman testified that "[i]t got to the point where she was stabbing furniture, and thinking her, and her family were in danger." Dr. Dozeman, testifying as an expert in the field of psychiatry, believed respondent posed "an inadvertent risk to herself given her level of paranoia," but he did not think that respondent was a danger to others. Thus, the probate court did not clearly err when it found that respondent was "at least an inadvertent risk of harm to self" but "not a direct risk of

harm to others." Although respondent testified that she did not stab the furniture and instead merely "opened the upholstery to see what was inside," this Court gives broad deference to the probate court's credibility determinations because it is in the best position to assess witness credibility. See *In re Portus*, 325 Mich App at 397. Thus, we need not credit respondent's testimony, as respondent urges on appeal. Moreover, to the extent that respondent's testimony, if credited, may contradict certain evidence on which the trial court relied to reach its conclusion, evidence may be clear and convincing even if it was contradicted. *In re Pederson*, 331 Mich App at 472. Accordingly, because the probate court's findings do not leave us with a definite and firm conviction that a mistake was made, we conclude that the probate court did not clearly err when it found by clear and convincing evidence that respondent was a person requiring treatment under MCL 330.1401(1)(a). See *In re Portus*, 325 Mich App at 381.

Respondent further argues that she did not qualify as a person requiring treatment under MCL 330.1401(1)(c) because (1) there was no evidence that treatment was necessary to prevent a relapse or harmful deterioration of her condition and (2) there was no evidence that she presented a substantial risk of significant physical or mental harm to herself. While we need not address this argument because we conclude that respondent qualified as a person requiring treatment under MCL 330.1401(1)(a), we address respondent's arguments for completeness, and explain why we disagree.

Both Dr. Dozeman's and respondent's testimony showed that treatment was necessary to prevent a relapse or harmful deterioration of respondent's condition, which may result in physical or mental harm to respondent herself. Dr. Dozeman testified that respondent "had three prior hospitalizations for psychosis in Traverse City before this hospitalization," and that she had not been taking any medications even though she was supposed to be taking an antipsychotic medication as recently as 2020. According to Dr. Dozeman, upon respondent's hospitalization pursuant to this petition, respondent "presented as very disorganized with a tangential thought process," and she was focused on her home being attacked by the Illuminati. Dr. Dozeman testified that respondent did not understand her diagnosis and need for treatment, and respondent refused to take any psychotropic medication while she was hospitalized. Dr. Dozeman reported that respondent did not sleep during the three nights before the hearing on the petition, and she was "documented throughout the day to be having conversations with herself." Respondent's testimony confirmed that she was unwilling to recognize and address problems she was experiencing with her mental health—respondent testified that she did not suffer from schizophrenia because schizophrenia was when you hear voices in your head, whereas the voices that respondent heard came "from sources in the distance." On the basis of this evidence, the probate court did not clearly err when it found by clear and convincing evidence both that treatment was necessary to prevent a harmful deterioration of respondent's condition and that respondent presented a substantial risk of harm to herself. Accordingly, the probate court properly found that respondent was a person requiring treatment under MCL 330.1401(1)(c).

III. DUE PROCESS

Respondent next contends that the probate court denied her the right to due process because the court did not allow respondent to personally cross-examine Dr. Dozeman or allow respondent to provide additional testimony as a witness. Respondent additionally argues that the probate court denied her the right to due process by failing to consider respondent's post-hearing letter to the court as a motion for new trial under MCR 2.611. We disagree.

This Court reviews de novo claims of constitutional error. *In re Jestila*, ___ Mich App ___, ___ n 3; ___ NW2d ___ (2023) (Docket No. 362500); slip op at 2.

"Proceedings seeking an order of involuntary mental health treatment under the Mental Health Code for an individual on the basis of mental illness . . . generally are referred to as 'civil commitment' proceedings." *In re Portus*, 325 Mich App at 382. Such proceedings "are not criminal in nature." *In re Londowski*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355635); slip op at 3-4. Nevertheless, "[t]he United States Supreme Court has recognized that civil commitment proceedings . . . implicate important liberty interests protected by due process." *Id.* at ___; slip op at 6. Due process in civil proceedings "requires that a party receive notice of the proceedings against it and a meaningful opportunity to be heard." *In re Jestila*, ___ Mich App at ___; slip op at 2 (quotation marks and citation omitted). The opportunity to be heard is "the fundamental requisite of due process of law." *Bullington v Corbell*, 293 Mich App 549, 556; 809 NW2d 657 (2011) (brackets omitted).

First, respondent argues that the probate court denied respondent due process because the court did not allow respondent to personally cross-examine Dr. Dozeman or allow respondent to provide additional testimony as a witness after direct examination concluded. Pursuant to MCL 330.1459(1), respondent had a right to cross-examine Dr. Dozeman. However, that does not mean that respondent *herself* had the right to conduct cross-examination. Respondent was represented by court-appointed counsel, and, pursuant to MCR 5.732(A), respondent's counsel was required to represent respondent in the hearing on the petition. It was therefore appropriate for the probate court to ask respondent's attorney, not respondent, for cross-examination of Dr. Dozeman. Although respondent's attorney chose not to ask Dr. Dozeman any questions, that decision did not require the court to allow respondent to personally question Dr. Dozeman. Under the Michigan Rules of Evidence, which apply to proceedings under the Mental Health Code, see MCL 330.1459(2), the probate court was allowed to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," MRE 611. The probate court did that when it asked respondent's counsel, not respondent, to cross-examine Dr. Dozeman. Similarly, the probate court exercised reasonable control over the mode in which respondent provided testimony as a witness when it stopped respondent from testifying when there was no question asked of respondent. See MRE 611; MCL 330.1459(2).[2]

---

[2] Respondent alternatively argues that her counsel rendered ineffective assistance by failing to cross-examine Dr. Dozeman and refusing to ask respondent more questions. This issue was never raised in respondent's statement of questions presented and is otherwise unpreserved. Regardless, to establish a claim of ineffective assistance, respondent must show that (1) counsel's performance was deficient under an objective standard of reasonableness and (2) but for counsel's deficient performance, the outcome of the proceedings would have been different. *In re Londowski*, ___ Mich App at ___; slip op at 12. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Respondent merely asserts that her trial counsel should have cross-examined Dr. Dozeman and asked respondent more questions, which is not sufficient to

Second, respondent argues that the probate court denied respondent the right to due process when it failed to consider respondent's post-hearing letter as a motion for new trial. The letter referenced by respondent was a three-page document that consisted of two pages of bullet points identifying "false claims" made by the petitioning officer and Dr. Dozeman, and one page that stated, "Re: denial of 1st appeal of judgement." Pursuant to MCR 1.109(D)(1)(b), the first part of every document filed with the court "must contain a caption stating . . . *the identification of the document*." MCR 1.109(D)(1)(b)(*iv*) (emphasis added). Respondent's letter did not identify itself as a motion for new trial. In fact, the letter did not even state that respondent was seeking any type of relief. We are hesitant to hold that the probate court should have sua sponte interpreted an ambiguous (at best) letter in a specific way. Further, even if we were not hesitant to render such a holding, respondent fails to cite any authority that would permit this Court to hold that the trial court was *required* to interpret respondent's letter as a motion for a new trial.[3] Accordingly, because respondent did not identify her letter as a motion for new trial, and because she provides no basis on which this Court could require the probate court to sua sponte interpret respondent's ambiguous letter as a motion for a new trial, we conclude that the probate court did not err when it did not treat respondent's letter as a motion for new trial.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica

---

overcome the strong presumption that trial counsel's decisions to not do so was sound strategy. Further, respondent has not presented an offer of proof regarding the evidence that would have been gained through a cross-examination of Dr. Dozeman or additional testimony from respondent, so we have no basis to conclude that the outcome of the proceedings would have been different had respondent's counsel cross-examined Dr. Dozeman or asked respondent additional questions. Accordingly, respondent has failed to establish either prong of her ineffective assistance claim.

[3] The closest respondent gets to citing supportive authority is citing *In re Moriconi*, 337 Mich App 515; 977 NW2d 583 (2021), which, according to respondent, held "that the trial court erred in failing to allow [the] respondent to exercise a deferral and enter voluntary treatment, instead moving forward with a trial, merely because [the] [r]espondent failed to fill out the right form to request a deferral." Contrary to respondent's argument, however, *Moriconi*'s holding is very different from what respondent requests this Court to hold here. *Moriconi* held that, because the respondent "made clear that she desired a deferral and sought guidance from the court regarding the form and the means necessary to comply," the probate court erred by denying the respondent's request for deferral merely because she failed to follow the statutory procedure. *Id*. at 528. Here, in contrast, respondent's letter in no way conveyed to the trial court that she was requesting a new trial. Instead, respondent wishes this Court to hold that the probate court was required to sua sponte interpret respondent's ambiguous letter as a motion for a new trial. This is clearly different from the situation in *Moriconi*, so respondent's analogy to *Moriconi* is inapposite.